*State of Maryland v. Douglas Ford Bey II*, No. 49, September Term, 2016. Opinion by Hotten, J.

**CRIMINAL LAW – STATUTORY INTERPRETATION – PLAIN LANGUAGE**: The Court of Appeals engaged in statutory interpretation of Maryland Code (2012 Repl. Vol.), Criminal Law Article § 3-315 ("Crim. Law") to determine the unit of prosecution permitted under the statute. The plain language of the statute provides that separate types of prohibited sexual acts do not constitute separate units of prosecution.

**CRIMINAL LAW – STATUTORY INTERPRETATION – AMBIGUITY – RULE OF LENITY**: The Court of Appeals determined that Crim. Law § 3-315 was ambiguous as to whether separate convictions and sentences could be obtained for multiple uninterrupted ninety-day intervals of a continuing course of conduct, as contradictory reasonable interpretations subsisted with equal force even after the tools of statutory construction were exhausted. Thus, the rule of lenity mandated that the statute be construed so as to not provide multiple punishments to the criminal defendant.

Circuit Court for Frederick County
Case No. K14-54600
Argued: January 9, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 49

September Term, 2016

_____

STATE OF MARYLAND

v.

DOUGLAS FORD BEY II

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,


JJ.

_____

Opinion by Hotten, J.
Watts, J., joins in judgment only.
Barbera, C.J., McDonald, and Getty, JJ.,
concur.

_____

Filed: March 27, 2017

Respondent, Douglas Ford Bey II, was convicted by a jury on seventeen various counts, resulting in a cumulative sentence of 390 years in prison. In a reported opinion, the Court of Special Appeals affirmed Bey's convictions, but vacated his sentences and remanded for a new sentencing proceeding. *Bey v. State*, 228 Md. App. 521, 139 A.3d 1113 (2016). We granted the State's petition for writ of certiorari to consider whether the Court of Special Appeals erred in determining that Maryland Code (2012 Repl. Vol.), Criminal Law Article § 3-315 ("Crim. Law"), entitled "Continuing course of conduct against child[,]"[1] prohibits multiple convictions and sentences per victim,

---

[1] Maryland Code, Criminal Law Article § 3-315 provides in its entirety that:

**In general**

(a) A person may not engage in a continuing course of conduct which includes three or more acts that would constitute violations of § 3-303, § 3-304, § 3-305, § 3-306, or § 3-307 of this subtitle over a period of 90 days or more, with a victim who is under the age of 14 years at any time during the course of conduct.

**Penalty**

(b)(1) A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 30 years.

(2) A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence under § 3–602 of this title.

**Required number of acts**

(c) In determining whether the required number of acts occurred in violation of this section, the trier of fact:

(1) must determine only that the required number of acts occurred; and

(continued…)

regardless of the duration of the abuse or the type of sexual acts committed. The plain

language of the statute prohibits a defendant from being convicted and sentenced for each

type of prohibited sexual act as a separate unit of prosecution. Moreover, we determine,

after exhaustion of the rules of statutory construction, that the statute is ambiguous

regarding whether a defendant may be convicted and sentenced for multiple uninterrupted

ninety-day minimum intervals of a continuing course of conduct. Thus, the rule of lenity

operates to bar multiple punishments. Accordingly, for the reasons that follow, we shall

affirm the judgment of the Court of Special Appeals.

---

(…continued)
        (2) need not determine which acts constitute the required number of acts.

**Merger of offenses**

(d)(1) A person may not be charged with a violation of § 3-303, § 3-304, § 3-305, § 3-306, or § 3-307 of this subtitle involving the same victim in the same proceeding as a violation of this section unless the other violation charged occurred outside the time period charged under this section.

(2) A person may not be charged with a violation of § 3-303, § 3-304, § 3-305, § 3-306, or § 3–307 of this subtitle involving the same victim unless the violation charged occurred outside the time period charged under this section.

**FACTS AND LEGAL PROCEEDINGS**[2]

**The Evidence at Trial**

The female victim, a minor at the time of the sexual abuse and at trial, testified that she was sexually abused by Bey, her putative father, for approximately four years. The first instance of abuse occurred when the victim was ten years old when Bey performed cunnilingus on the victim. After this, Bey exposed the victim to pornography and forced her to engage in fellatio and vaginal intercourse. During the year that the victim was eleven years old, the sex acts—vaginal intercourse, fellatio, and cunnilingus—occurred multiple times per week. These acts continued with the same frequency during the years when the victim was twelve and thirteen years old. If the victim resisted, Bey threatened to beat her with a belt. Bey threatened to kill the victim or hurt her younger siblings if she told anyone about the abuse.

When the victim was thirteen, she learned that she was pregnant. When the victim was fourteen, Bey took her to the University of Maryland Medical Center to have the fetus aborted. Bey continued to sexually abuse the victim. The victim ultimately reported Bey's sexual abuse to a therapist, who brought the matter to the attention of the authorities.

An investigation was performed and the victim made a recorded statement. When Detective Ronald Dement of the Frederick County Sheriff's Office learned that Bey had forced the victim to perform fellatio earlier the same day of the victim's statement, the

---

[2] Because Bey generally accepts the Statement of Facts presented in the State's brief, our recitation of the relevant facts is derived from: (1) the undisputed facts presented in that brief and (2) the transcripts from Bey's September 2014 trial.

detective obtained a search warrant to conduct a forensic sexual assault exam of Bey. Subsequent testing showed that the victim's DNA was present on Bey's penis.

Fetal tissue from the victim's abortion was obtained. DNA testing revealed that Bey was the biological father of the fetus. The State introduced into evidence recorded calls that Bey made while incarcerated in the Frederick County Detention Center. During those calls, Bey admitted to having his daughter perform oral sex on him.

**Procedural History**

Bey was charged in Count 2 with a seven-month-long course of conduct—from the time the abuse began at age ten until the victim turned eleven—that alleged three or more acts of second-degree rape, second-degree sexual offense, or third-degree sexual offense.[3] For the years that the victim was eleven, twelve, and thirteen years old, Bey was charged with a continuing course of conduct for each year by the specific sexual act committed (vaginal intercourse, fellatio, or cunnilingus). For example, for the year that the victim was eleven years old, Bey was charged with three continuing course of conduct counts, alleging three or more acts of second-degree rape (Count 4), three or more acts of fellatio (Count 5), and three or more acts of cunnilingus (Count 6). These charges were repeated for the year in which the victim was twelve years old (with Count 8 charging three or more acts of second-degree rape, Count 9 charging three or more acts of fellatio, and Count 10 charging three or more acts of cunnilingus), and for the year that the victim was thirteen

---

[3] Md. Code, Crim. Law (2012 Repl. Vol., 2015 Supp.) §§ 3-304 (second-degree rape), 3-306 (second-degree sexual offense), 3-307 (third-degree sexual offense), 3-315 (continuing course of conduct with a child).

years old (with Count 12 charging second-degree rape, Count 13 charging fellatio, and Count 14 charging cunnilingus).

The trial court's instructions and the verdict sheet reflected the specificity of the indictment. The jury found Bey guilty of all the continuing course of conduct offenses. The trial court imposed consecutive terms of imprisonment of twenty-five and thirty years as to each offense for a total of 265 years. The trial court imposed additional consecutive and concurrent terms of imprisonment on the other counts totaling 125 years for an aggregate sentence of 390 years.

As part of a motion for judgment of acquittal, Bey's counsel argued that all of the continuing course of conduct counts should be merged:

> That was one long period of conduct and certainly if you were to believe everything that [the victim] would say is true there was more than, um, three or more acts that will constitute a violation of those acts over a 90 day period. . . . But there's no, there was no gap or break to start the clock over again so to speak.

> ***

> [T]he continuing course of conduct never stopped. If there was a, if the testimony bore out that there was a specific break for lack of a better term that he stopped and he didn't do it for six months of whatever, but then that conduct started up again, I guess the State could argue that it did stop. It was a new course of conduct that started. But the testimony was that it never stopped during that time period.

The court interpreted defense counsel's argument as follows:

> Well, what he's really saying is that sexual abuse on [a] minor, continuing course of conduct, is a legitimate charge, but the evidence presented shows one continuing course of conduct . . . .

In response, the prosecutor argued that Crim. Law § 3-315 allows for prosecutorial discretion in how the State sets forth separate charges brought under the statute:

> What's punishable in the statute are, are three sexual acts that occur in a 90 day period. That's an offense. I've frankly given the Defendant a, a lot more leeway and only charged, only charged one charge for a year period where I could have charged four. . . . He's committed multiple acts over a year period. So he has received the benefit of me not overcharging and charging for the particular wrong that [Crim. Law §] 3-315 is meant to address.

The prosecutor further argued that the statute allows for separate counts of Crim. Law § 3-315 violations for each type of sexual offense committed, as the evidence substantiated at least three acts of rape, three acts of cunnilingus, and three acts of fellatio for the years that the victim was eleven, twelve, and thirteen years of age. The trial court denied the motion for judgment of acquittal.

Bey's counsel argued at sentencing that only one continuing course of conduct charge was permitted per time period alleged. The court disagreed and imposed separate sentences for each offense.

In a reported opinion, the Court of Special Appeals affirmed Bey's convictions, but vacated his sentences and remanded for a new sentencing proceeding. *Bey v. State*, 228 Md. App. 521, 139 A.3d 1113 (2016). The Court of Special Appeals interpreted the plain language of the statute and the legislative history to conclude that "[b]y electing to charge Bey under Crim. Law § 3-315, the State could only obtain at most a single conviction of one continuing course of conduct with a singular victim, and thus, Bey may be sentenced for only one conviction of a continuing course nature." *Id*. at 542, 139 A.3d at 1125 (footnote omitted). In addition, the Court of Special Appeals concluded that, assuming

*arguendo* that the State's construction of Crim. Law § 3-315 "could be deemed plausible and persuasive, . . . the Legislature's intent with regard to the unit of prosecution is capable of at least two contradictory interpretations and the statute is therefore ambiguous." *Id*. at 543–44, 139 A.3d at 1126 (footnote omitted). Thus, as an independent basis, the Court of Special Appeals held that the rule of lenity would mandate that the sentences on the continuing course of conduct convictions be merged and remanded for a new sentencing. *Id*. at 544, 139 A.3d at 1125.

In a concurring opinion, Judge Daniel A. Friedman indicated that the State's interpretation of Crim. Law § 3-315 provided an alternative reasonable construction of the statute. Thus, Judge Friedman agreed that the statute was ambiguous, and therefore, subject to the rule of lenity. *Id*.

We granted the State's petition for writ of certiorari, which presented the following question:

> As a matter of first impression, did the Court of Special Appeals err in concluding that Section 3-315 of the Criminal Law Article, which prohibits engaging in a continuing course of conduct with a child, prohibits more than one conviction and sentence per victim, regardless of the duration of the abuse or the type of sexual acts committed?

We determine that the plain language of the statute provides that separate types of prohibited sexual acts do not constitute separate units of prosecution. Moreover, the statute is ambiguous as to whether multiple convictions and sentences may be obtained for multiple ninety-day minimum intervals of an uninterrupted continuing course of conduct. The statute is thus subject to the rule of lenity.

- 7 -

# DISCUSSION

The State argues that the plain language of Crim. Law § 3-315 permits more than one charge of a continuing course of conduct per victim. Furthermore, the State asserts that if the statute is deemed to be ambiguous, the history and purpose of Crim. Law § 3-315 support resolving the ambiguity in favor of permitting more than one charge of continuing course of conduct per victim, and the rule of lenity does not apply. Bey responds that the statute unambiguously permits just one conviction for one continuing course of conduct per victim. Alternatively, Bey argues that even if the statute is ambiguous, the rule of lenity permits just one conviction for one continuing course of conduct per victim.

In order to determine the legality of Bey's sentence, we must determine what unit of prosecution the General Assembly envisioned when it established Crim. Law § 3-315. *Triggs v. State*, 382 Md. 27, 41, 852 A.2d 114, 122 (2004). "This Court applies our normal rules of statutory construction in determining the legislative intent regarding the proper unit of prosecution and appropriate unit of punishment with respect to violations of any criminal statute." *Melton v. State*, 379 Md. 471, 478, 842 A.2d 743, 747 (2004).

The rules of statutory construction are well-established:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our

- 8 -

inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Johnson*, 415 Md. 413, 421–22, 2 A.3d 368, 373 (2010) (quoting *Lockshin v. Semsker,* 412 Md. 257, 274–77, 987 A.2d 18, 28–29 (2010)).

**The Plain Language of Crim. Law § 3-315**

We begin our quest to discern the legislative intent by resorting to the plain language of the statute. Subsection (a) of Crim. Law § 3-315 sets forth the offense of continuing course of conduct as follows:

(a) A person may not engage in a continuing course of conduct which includes three or more acts that would constitute violations of § 3-303 [first-

- 9 -

degree rape], § 3-304 [second-degree rape], § 3-305 [first-degree sexual offense], § 3-306 [second-degree sexual offense], or § 3-307 [third-degree sexual offense] of this subtitle over a period of 90 days or more, with a victim who is under the age of 14 years at any time during the course of conduct.

Moreover, subsection (c) provides that:

[i]n determining whether the required number of acts occurred . . . , the trier of fact:

(1) must determine only that the number of acts occurred; and

(2) need not determine which acts constitute the required number of acts.

Subsection (d) further prohibits the State from charging a defendant with individual incidents of sexual crimes against the same victim, "unless the other violation charged occurred outside the time period charged under this section."

The State argues that each type of prohibited sexual act may constitute a separate course of conduct, even during overlapping intervals of time. Accordingly, Bey was convicted of courses of conduct related to rape, cunnilingus, and fellatio during overlapping time periods. Regarding this issue, the Court of Special Appeals stated:

The State supports this argument by reference to the disjunctive "or," rather than the conjunctive "and," in Crim. Law § 3-315(a). We do not think this argument floats the State's boat grammatically. Moreover, we find it implausible that the Legislature intended to treat the separate types of illegal sex acts as separate units of prosecution.

*Bey*, 228 Md. App. at 543 n.13, 139 A.3d at 1126 n. 13. We agree with the Court of Special Appeals. The State's interpretation regarding this discrete issue is unreasonable under the plain language of the statute. Subsection (a) of Crim. Law § 3-315 provides "[a] person may not engage in a continuing course of conduct which *includes* three *or more* acts that would constitute violations of [other sexual crimes statutes.]" (emphasis added). When the

- 10 -

drafters of a statute use the term "includes" it is generally intended to be used as illustration and not limitation. *Tribbitt v. State*, 403 Md. 638, 647–48, 943 A.2d 1260, 1265 (2008). *See also* Md. Code, General Provisions Article § 1-110 ("'Includes' or 'including' means includes or including by way of illustration and not by way of limitation."). Subsection (c) of Crim. Law § 3-315 confirms this, as it requires the trier of fact to determine "only that the required number of acts occurred" and "not . . . which acts constitute the required number of acts." Thus, the statute prohibits separate convictions and sentences for each type of prohibited sexual act as a separate prohibited course of conduct during an uninterrupted statutorily-defined course of conduct.

Regarding the unit of prosecution as it relates to ninety-day minimum intervals of time in a continuing course of conduct, Crim. Law § 3-315(a) provides that "[a] person may not engage in a continuing course of conduct which includes three or more acts . . . over a period of 90 days *or more*[.]" (emphasis added). The plain language provides that a course of conduct must be ninety days, at a minimum.

It is reasonable to interpret the plain language of subsection (a) as providing that the State is limited to one conviction for one continuing course of conduct—even when that course of conduct persists for consecutive intervals of ninety days or more. In support of this reading, Bey asserts that if the General Assembly intended for multiple convictions to be obtained, it would not have added the language "or more."

It is likewise reasonable to interpret subsection (a) as setting forth a unit of prosecution as being every statutorily defined course of conduct that is at least ninety days. Theoretically, the State could bring a Crim. Law § 3-315 charge based on a 120-day

- 11 -

interval in which three or more acts prohibited under Crim. Law § 3-315 occurred, followed by a Crim. Law § 3-315 charge based on a consecutive 90-day interval in which three or more acts prohibited under Crim. Law § 3-315 occurred. The statutory language does not prohibit the State's interpretation, and it is a reasonable interpretation based on the plain language of the statute.

Similarly, reading the statutory scheme as a whole does not elucidate the General Assembly's intent on this issue. Subsection (d) of Crim. Law § 3-315 provides that the State may charge individual sex crimes, as enacted in the statutory scheme, that fall outside the time period charged within a continuing course of conduct:

> (d)(1) A person may not be charged with a violation of § 3-303 [first-degree rape], § 3-304 [second-degree rape], § 3-305 [first-degree sexual offense], § 3-306 [second-degree sexual offense], or § 3-307 [third-degree sexual offense] of this subtitle involving the same victim in the same proceeding as a violation of this section unless the other violation charged occurred outside the time period charged under this section.
>
> (2) A person may not be charged with a violation of § 3-303 [first-degree rape], § 3-304 [second-degree rape], § 3-305 [first-degree sexual offense], § 3-306 [second-degree sexual offense], or § 3-307 [third-degree sexual offense] of this subtitle involving the same victim unless the violation charged occurred outside the time period charged under this section.

A court interpreting a similar Texas statute observed:

> This legislative scheme has practical implications for the prosecution of any case involving sexual abuse of a child. In any given case, a prosecutor may believe that a young victim's memory is too vague to support a conviction for independent acts of sexual abuse occurring before a certain time period, and the State will likely charge the defendant with continuous sexual abuse during that particular period of time. However, the State may believe the victim is able to testify with certainty regarding acts occurring outside that time frame or the State may have other evidence of the defendant's wrongdoing on those occasions. Regardless whether the victim has turned 14 before that time, the statute gives the prosecutor the discretion to go forward

on those additional charges, and must consequently have the discretion to curtail the time frame of the continuous sexual abuse offense in order to do so.

*Holton v. State*, 487 S.W.3d 600, 614 n. 10 (Tex. App. 2015). In *Holton*, the court held that the Texas statute, like the Maryland statute, allows the prosecution to charge a continuing course of conduct and additional counts of individual sexual crimes—provided that those individual crimes fall outside the time period alleged in the continuing course count. *Id*. at 615.

The plain language of Crim. Law § 3-315(d) and the remainder of the statutory scheme do not provide clarity as to whether the General Assembly intended the State to be permitted to divide a single continuing course of conduct into multiple intervals of a continuing course of conduct of at least ninety days. The General Assembly did not enact the statute to contain a single-use limitation, although it could have. We cannot, however, add that language to the statute by judicial fiat. *See Lonaconing Trap Club, Inc. v. Maryland Dep't of Env't*, 410 Md. 326, 339, 978 A.2d 702, 709 (2009) (stating that "[we] neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute . . ."). Further, it is reasonable to interpret the plain language of the statute as granting the State the latitude to charge multiple units of prosecution for a single uninterrupted course of conduct, as long as each unit of prosecution is a minimum of ninety days. But that is only one reasonable interpretation. *See id*. (stating that "nor [do we] construe the statute with forced or subtle interpretations that limit or extend its application."). The plain language of the statute is ambiguous, as it is subject to multiple

- 13 -

competing reasonable interpretations. *Wagner v. State*, 445 Md. 404, 418, 128 A.3d 1, 9 (2015).

## Legislative History and Purpose

As we attempt to discern the legislative intent, further canons of statutory construction do not resolve this ambiguity. The State is correct that the General Assembly intended, in adopting the statute, to assist the prosecution in affording more protection to sexually abused children, who are often unable to specify when or what sexual offenses occurred, especially when those offenses are repetitive in nature. That is undisputed. An additional legislative intent, however, is also evidenced—defendants would be exposed to lighter sentences when the State elected to proceed under this statute, rather than prosecuting several individual sex crimes.

In the case at bar, the Court of Special Appeals recognized that Crim. Law § 3-315 was enacted in apparent response to this Court's decision in *Cooksey v. State,* 359 Md. 1, 7, 752 A.2d 606, 609 (2000). *Bey*, 228 Md. App. at 539, 139 A.3d at 1123. In *Cooksey*, we stated:

> All of the courts are sympathetic to the plight of both the young victims, often unable to state except in the most general terms when the acts were committed, and of prosecutors, either hampered by the lack of specific information or, when it is reported that the conduct occurred dozens or hundreds of times over a significant period, faced with the practical problem of how to deal with such a multitude of offenses. The courts are all also properly concerned with the rights of defendants, who go to trial with a presumption of innocence, and with the ramifications to them of duplicitous pleading.

*Cooksey*, 359 Md. at 18–19, 752 A.2d at 615. We then acknowledged that "reconceptualization of child sexual assault as a continuing course of conduct crime would

- 14 -

eliminate duplicity problems in charging these offenses," but concluded, pursuant to notions of judicial deference, that the creation of such a crime was for the Legislature, not this Court. *Id*. at 19, 752 A.2d at 616 (citation omitted). We thus invited the Legislature to act to create the continuing sexual offense statute that is now codified as Crim. Law § 3-315. *See id*. at 27, 752 A.2d at 620 (stating that "New York and California attempted to deal with the problem by statute, allowing the legislative branch, after public hearings, to weigh all of the competing interests and concerns and strike a proper balance. That avenue, of course, is open in Maryland.").

When the legislation was introduced during the 2002 Regular Session, as H.B. 1302, it faced opposition at the committee hearings. Professor Lynn McClain at the University of Baltimore School of Law, who was instrumental in the drafting of the legislation, later wrote how proponents of the Legislation responded to this opposition:

> [O]ne argument that proved helpful for us as proponents was that, in the absence of Maryland's recognition of such an offense, prosecutors had to charge multiple counts of rape or other sex crimes, and were sometimes obtaining sentences of over 100 years. Placing this crime on the books would give the prosecutors a more appropriate option (although they need not avail themselves of it).

Lynn McClain, *Reforming the Criminal Law: University of Baltimore School of Law Group Goes to Annapolis*, 34 U. Balt. L.F. 2, 10 (2003) (footnotes omitted). In its decision in the case at bar, the Court of Special Appeals likewise examined what is viewed as a joint purpose of the statute:

> Charging a defendant under Crim. Law § 3-315 is a choice that the prosecution elects to make; it is not a requirement under Maryland law. The State could choose to charge each individual sexual act and be burdened with the responsibility of proving specifically every occurrence of each sexual act

alleged during the time frame. This statute provides relief to the prosecution from this challenging burden, made difficult inherently with younger victims who struggle with articulating exactly what sexual act occurred and with remembering the exact details and dates of each incident.

*Bey*, 228 Md. App. at 542 n.11, 139 A.3d at 1125 n. 11.  Bey argues that the State's choice to prosecute under Crim. Law § 3-315 presents an inherent trade-off—the prosecution is relieved of proving specifically every occurrence of each sexual act, but the prosecution may only obtain a thirty-year maximum sentence for a violation of the statute.[4]  In our view, recognition of this joint purpose provides a reasonable interpretation of the statute.

Crim. Law § 3-315 was derived from the continuing course of conduct statutes enacted in Arizona, California, New York, and Wisconsin. McLain, 34 U. Balt. L.F. at 9, nn. 99–100 (citing Ariz. Rev. Stat. § 13-1417 (2001); Cal. Penal Code, § 288.5 (West 1999); NY. Penal Law § 130.75 (McKinney 1997 & Supp. 2001); Wis. Stat. Ann. § 948.025 (West 2001)).  The statutes from these states were used to "arrive[] at a draft that seemed to take the best from those models."  McLain, 34 U. Balt. L.F. at 9.

We note that the statutes of two of these states, California and Arizona, include a provision expressly prohibiting a defendant from being charged with more than one count of a continuing course of conduct, i.e., a single-use provision.  The California statute provides, in pertinent part:

---

[4] We note that the prosecution is not prohibited from charging violations of other statutes, as provided for in Crim. Law § 3-315(d), which fall outside the time frame of the offenses charged within the continuing course count.  In this case, for instance, Bey was also convicted of five counts of sexual abuse of a minor and two counts of third-degree sexual offense.

A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim.

Cal. Penal Code, § 288.5(c). Similarly, the Arizona statute provides, in pertinent part:

A defendant may be charged with only one count under this section unless more than one victim is involved. If more than one victim is involved, a separate count may be charged for each victim.

A.R.S. § 13-1417(D).

The New York and Wisconsin continuing course statutes, like the Maryland statute, do not include a single-use provision. A New York court nonetheless has stated:

[t]he crime of course of sexual conduct against a child . . . is a continuing offense and an indictment cannot charge a defendant with more than one count of a crime that can be characterized as a continuing offense unless there has been an interruption in the course of conduct.

*People v. Moore*, 59 A.D.3d 809, 810–11, 874 N.Y.S.2d 283, 285 (2009) (internal quotation marks and citations omitted).[5]

The State proposes that a Wisconsin court's interpretation of that state's continuing course statute is persuasive. *State v. Nommensen*, 741 N.W.2d 481 (Wis. App. 2007), *cert. denied*, 746 N.W.2d 812 (2008). Finding that the continuing course of conduct statute was enacted "to facilitate prosecution," the court stated: "To hold that multiple prosecutions are not permitted where the pattern of conduct reveals multiple instances of '3 or more violations' of sexual assault in different venues would run counter to this statutory purpose." *Id*. at 486–87 (citing W.S.A. § 948.025) (footnote omitted).

---

[5] The State rebuts that the New York court did not engage in any statutory construction in reaching this conclusion. We find, however, that the conclusion is nonetheless instructive regarding the issue before this Court.

- 17 -

*Nommensen*, however, is highly distinguishable from the case at bar. The court in *Nommensen* expressly noted that multiple convictions were permitted because the charges "cover[ed] wholly discrete instances at different times and in different venues." *Nommensen*, 741 NW. 2d at 487. One count alleged sexual abuse in Washington County, between May 1994 and April 1998. *Id*. at 484. The second count alleged sexual abuse in Fond du Lac County, between April 1998 and December 2000. *Id*. The Wisconsin court found no problem with the multiple counts, because "the conduct alleged against Nommensen in Fond du Lac county and the separate conduct alleged in [Washington County] each represent[ed] a new volitional departure in Nommensen's course of conduct." *Id*. at 485 (quotation marks, brackets, and citation omitted). The court thus recognized a clear interruption in the conduct which showed two distinct courses of conduct, as opposed to one continuous course. *See id*. In the case at bar, the issue of whether there was a clear interruption in Bey's continuing course of conduct is not before this Court.

Like the New York and Wisconsin statutes, Crim. Law § 3-315 does not contain a single-use provision. Given that the General Assembly was aware of the single-use provisions in the California and Arizona statutes, the absence of a single-use provision in our statute supports a reasonable interpretation that our Legislature intended to allow multiple counts of Crim. Law § 3-315 for multiple ninety-day intervals of a continuing course of conduct. This is, however, an additional competing reasonable interpretation of the statute. In light of the competing interpretations we have outlined, we are not able to say that the *absence* of an express single-use provision absolves the statute of ambiguity in

- 18 -

favor of the State's proffered interpretation of the statute as it relates to the duration of the continuing course. Moreover, given the contradictory, reasonable interpretations which subsist with equal force even after the tools of statutory construction are exhausted, the statute is ambiguous.

## The Rule of Lenity

The rule of lenity instructs that courts "will not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what [the legislature] intended." *White v. State,* 318 Md. 740, 744, 569 A.2d 1271, 1273 (1990) (quoting *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914 (1978)). "Stated simply, the rule of lenity only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature." *Gardner v. State*, 420 Md. 1, 17, 20 A.3d 801, 811 (2011).

In the case at bar, the standard tools of statutory interpretation fail to discern the legislative intent regarding whether Crim. Law § 3-315 prohibits more than one conviction and sentence per victim, regardless of the duration of the abuse. We cannot conduct an arbitrary choice regarding which reasonable interpretation prevails. Instead, the rule of lenity compels the result. *See Randall Book Corp. v. State,* 316 Md. 315, 327, 558 A.2d 715, 721 (1989) (citing *Albernaz v. United States*, 450 U.S. 333, 342–43, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981)). *See also Briggs,* 413 Md. at 286, 992 A.2d at 446 ("Ordinarily, the rule of lenity applies when the scales are evenly balanced after a court has weighed contradictory interpretations of a statute." (citing *Randall Book Corp.,* 316

- 19 -

Md. at 327, 558 A.2d at 721)).  As we have stated, "'ambiguous units of prosecution . . . , pursuant to the rule of lenity, must normally be construed in favor of the defendant,' effectively merging the offenses." *Triggs,* 382 Md. at 43, 852 A.2d at 124 (quoting *Melton v. State,* 379 Md. 471, 488, 842 A.2d 743, 753 (2004)).  Therefore, the sentences for the continuing course of conduct counts must be merged.

## CONCLUSION

We determine that the plain language of Crim. Law § 3-315 prohibits separate convictions and sentences for each type of prohibited sexual act as a separate prohibited course of conduct.  In addition, we determine that the statute is ambiguous, after exhaustion of the tools of statutory construction, and considering the competing reasonable interpretations regarding whether Crim. Law § 3-315 allows for only one conviction for consecutive ninety-day intervals of a single continuing course of conduct.  Thus, the rule of lenity operates to prohibit multiple punishments.  Accordingly, the sentences for the continuing course of conduct counts must be merged.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY FREDERICK COUNTY.**

Watts, J., joins judgment only.

Circuit Court for Frederick County
Case No. K14-54600
Argued: January 9, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 49

September Term, 2016

_____

STATE OF MARYLAND

v.

DOUGLAS FORD BEY II

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Concurring Opinion by Getty, J., which
Barbera, C.J., and McDonald, J., join.

_____

Filed: March 27, 2017

I concur in the result reached by the Majority. I agree that the plain language of Criminal Law ("CR") § 3-315 prohibits a defendant from being convicted and sentenced for multiple counts of a continuing course of conduct corresponding to each type of sexual act prohibited under the statute, and I join fully in this portion of the Majority's opinion. *See* Majority Slip Op. at 9–11. I also agree that CR § 3-315 is ambiguous with respect to whether the State can charge a defendant with multiple course-of-conduct offenses against the same victim by dividing the abuse into successive periods of time. *See id.* at 13 ("The plain language of the statute is ambiguous, as it is subject to multiple competing reasonable interpretations."). However, I disagree with the Majority's conclusion that this ambiguity cannot be resolved by the ordinary tools of statutory interpretation. *See id.* at 19 ("In the case at bar, the standard tools of statutory interpretation fail to discern the legislative intent regarding whether Crim. Law § 3-315 prohibits more than one conviction and sentence per victim, regardless of the duration of the abuse.").

Instead, I would hold that the Court can ascertain the legislative intent of CR § 3-315 by viewing the plain language "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *See id.* at 8 (quoting *State v. Johnson*, 415 Md. 413, 421 (2010)). Therefore, I would not resort to applying the rule of lenity, which "only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature." *See id.* at 19 (quoting *Gardner v. State*, 420 Md. 1, 17 (2011)).

Although the Majority provides a thorough analysis of the legislative history and purposes of CR § 3-315, and of the statutes from other jurisdictions that served as models,

I believe the Majority fails to give appropriate consideration to the starting point for any statutory interpretation analysis: the plain language of the statute. I find it telling that the statute always refers to the continuing course of conduct offense in the singular form. For example, CR § 3-315(a) provides, "A person may not engage in *a* continuing course of conduct . . . with a victim who is under the age of 14 years at any time during *the* course of conduct." (Emphasis added.) Even more telling is that the statute also consistently refers to the time period over which the course of conduct occurs in the singular form. Paragraphs (1) and (2) of CR § 3-315(d) both state, "A person may not be charged with a violation of § 3-303, § 3-304, § 3-305, § 3-306, or § 3-307 of this subtitle involving the same victim . . . unless the [other] violation occurred outside *the time period* charged under this section." (Emphasis added.)

This language, while not conclusive, supports Mr. Bey's interpretation of the statute: the State is limited to one conviction for one continuing course of conduct per victim, even if the course of conduct persists for consecutive periods of at least ninety days each. If the General Assembly had intended to permit the State to charge multiple course-of-conduct offenses for multiple ninety-day intervals of abuse, it could have stated that charges for individual violations of CR §§ 3-303 through 3-307 must occur "outside the time *periods* charged under this section." This reading of the plain language of the statute, considered in context with the purposes of the statute discussed by the Majority, *see* Majority Slip Op. at 13–15, leads me to conclude that the General Assembly intended to limit the continuing course of conduct offense to one conviction per defendant, unless there are multiple victims.

2

Accordingly, I would not apply the rule of lenity in this case because I believe it is possible to determine the legislative intent of CR § 3-315 using our ordinary tools of statutory interpretation. As previously stated, the Majority notes that "the rule of lenity only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature." Majority Slip Op. at 19 (quoting *Gardner*, 420 Md. at 17). In other words, the rule of lenity provides a default position for the Court when the ordinary tools of statutory interpretation fail to resolve the ambiguity in the statute. *See Oglesby v. State*, 441 Md. 673, 676 (2015) ("When a court construes a criminal statute, it may invoke a principle known as the 'rule of lenity' when the statute is open to more than one interpretation and **the court is otherwise unable to determine** which interpretation was intended by the Legislature." (emphasis added)). Here, I believe the Court can determine, based on an analysis of the plain language, structure, and purposes of the statute, which of the two competing interpretations was intended by the Legislature and, therefore, the Court need not resort to the rule of lenity in this case.

Chief Judge Barbera and Judge McDonald have authorized me to state that they join in this opinion.

3