<u>Seamus Coyle v. State of Maryland</u>, No. 21, September Term, 2024

**RIGHT TO COUNSEL – EFFECTIVE ASSISTANCE OF COUNSEL – MARYLAND PUBLIC DEFENDER ACT – PETITION FOR WRIT OF *CERTIORARI* – PREJUDICE –** Supreme Court of Maryland held that, based on plain language of Maryland Public Defender Act, Md. Code Ann., Crim. Proc. (2001, 2018 Repl. Vol.) §§ 16-101 to 16-403, where panel attorney is authorized by Office of Public Defender ("OPD") pursuant to Act to represent indigent defendant in filing petition for writ of *certiorari* and attorney undertakes responsibility for filing petition, attorney must render effective assistance of counsel. Supreme Court concluded that, because plain language of Act unambiguously states that it is policy of State to assure effective assistance of counsel for indigent defendants in criminal cases and attorney was authorized by OPD pursuant to Public Defender Act to provide representation, attorney was required to provide effective assistance of counsel, and Court need not address issue of whether under Act defendant had right to counsel for filing petition for writ of *certiorari*.

Supreme Court of Maryland held that, in this case, attorney's conduct in failing to file petition for writ of *certiorari* fell below objective standard of reasonableness and constituted deficient performance under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Supreme Court held that where attorney is authorized by OPD pursuant to Public Defender Act to file petition for writ of *certiorari,* accepts authorization*,* and fails to file petition for writ of *certiorari* on defendant's behalf due to deficient performance, under <u>Strickland</u>, prejudice is established because as result of attorney's deficient performance defendant has been deprived of opportunity to have petition considered by Court.

Supreme Court of Maryland did not expand limited areas in which prejudice is presumed under <u>Strickland</u>. Supreme Court held that Petitioner satisfied <u>Strickland</u> prejudice requirement by demonstrating that attorney's deficient performance resulted in loss of opportunity to have petition for writ of *certiorari* considered by Court.

Circuit Court for Baltimore County
Case No. 03-K-10-001691

Argued: December 9, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 21

September Term, 2024

_____

SEAMUS COYLE

v.

STATE OF MARYLAND

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.

_____

Filed:  May 21, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Maryland Public Defender Act (the "Act"), codified at Md. Code Ann., Crim. Proc. (2001, 2018 Repl. Vol.) ("CP") §§ 16-101 to 16-403, provides that it is the policy of the State to "provide for the realization of the constitutional guarantees of counsel in the representation of indigent individuals, . . . in criminal [] proceedings in the State[,]" and to "assure the effective assistance and continuity of counsel to indigent accused individuals taken into custody and indigent individuals in criminal and juvenile proceedings before the courts of the State[.]" CP § 16-201(1)-(2). Pursuant to CP § 16-204, the Office of the Public Defender (the "OPD") is required to provide representation for indigent defendants at proceedings specified in the Act, such as criminal and juvenile proceedings in which an individual is charged with a serious crime. In other proceedings, although not required under the Act to do so, the OPD may provide representation to indigent individuals who qualify. In the event of a conflict of interest, the Public Defender may appoint an attorney known as a "panel attorney" to represent an indigent defendant. See CP § 16-208.

In this matter of first impression, we must decide whether, under the Act, a defendant is entitled to the effective assistance of counsel in filing a petition for a writ of *certiorari* where the OPD appointed a panel attorney to represent the defendant on direct appeal and, after the defendant's convictions were affirmed, authorized the panel attorney to file a petition for a writ of *certiorari* on the defendant's behalf. If the answer to this question is "yes," we must determine whether the attorney's failure to file the petition constituted ineffective assistance of counsel and, in particular, whether prejudice is presumed or whether the defendant must demonstrate that, but for counsel's deficient performance, the petition would have been granted. See Strickland v. Washington, 466

U.S. 668, 688, 694 (1984).

In the Circuit Court for Baltimore County, after a trial by jury, Seamus Coyle, Petitioner, was found guilty of first-degree murder, conspiracy to commit first-degree murder, and use of a handgun in the commission of a crime of violence, and sentenced to life imprisonment. Because representation posed a conflict of interest for the office, the OPD assigned a panel attorney to represent Mr. Coyle in a direct appeal to the Appellate Court of Maryland.

The Appellate Court affirmed Mr. Coyle's convictions. See Coyle v. State, No. 0997, Sept. Term 2012 (Md. Ct. Spec. App. July 11, 2014). Mr. Coyle's panel attorney discussed filing a petition for a writ of *certiorari* with both Mr. Coyle and the OPD and was authorized to file the petition. Mr. Coyle's panel attorney failed, however, to file a petition for a writ of *certiorari,* leading Mr. Coyle to petition for postconviction relief, alleging ineffective assistance of counsel. The circuit court denied Mr. Coyle's petition for postconviction relief. Mr. Coyle filed an application for leave to appeal, which was granted. In a split decision, the Appellate Court affirmed the circuit court's judgment denying postconviction relief. See Coyle v. State, No. 1440, Sept. Term, 2021, 2024 WL 1250562, at *1, *13 (Md. App. Ct. Mar. 25, 2024). Mr. Coyle filed a petition for a writ of *certiorari*, which this Court granted. See Coyle v. State, 488 Md. 386, 321 A.3d 784 (2024).

We hold that, based on the plain language of the Act, where an attorney is authorized by the OPD to represent an indigent defendant in filing a petition for a writ of *certiorari* and undertakes responsibility for filing the petition, the attorney must provide effective

assistance of counsel. We conclude that the panel attorney's conduct in this case, in failing to file a petition for a writ of *certiorari* on Mr. Coyle's behalf, fell below an objective standard of reasonableness, constituting deficient performance under the first part of the Strickland test. We hold that, where a defendant is entitled to the effective assistance of counsel, when a petition for a writ of *certiorari* is not filed on a defendant's behalf, under the second part of the Strickland test, prejudice is established by demonstrating that due to counsel's deficient performance the defendant has been deprived of an opportunity to have a petition considered by this Court.

Our holding emanates directly from the language of the Act, which provides, among other things, that it is the policy of the State to "assure the effective assistance and continuity of counsel to . . . indigent individuals in criminal . . . proceedings before the courts of the State[.]" CP § 16-201(2). Our holding is supported by the legislative history of the Act, which demonstrates that one of the primary purposes of the Act is to assure effective assistance of counsel to indigent defendants accused of serious criminal offenses.

For the reasons below, we reverse the judgment of the Appellate Court and direct that Mr. Coyle be permitted the opportunity to file a belated petition for a writ of *certiorari*. See Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 12-203.

## BACKGROUND
### Factual Background

The evidence presented by the State at trial established that on March 1, 2010, Walter Bishop, a man hired by Karla Porter, shot and killed Ms. Porter's husband, William Porter. An investigation into the shooting revealed a multi-person conspiracy involving

Ms. Porter and others that extended over a period of months leading up to the shooting. Mr. Coyle is Ms. Porter's nephew. During a period of months leading up to the murder, Ms. Porter complained to Mr. Coyle that her husband was physically and verbally abusive. Eventually, Ms. Porter told Mr. Coyle that she wanted to find someone to kill her husband. Mr. Coyle testified that he did not take Ms. Porter seriously. In the months preceding the shooting, though, Ms. Porter and her daughter solicited several individuals to carry out the crime. Eventually, Mr. Coyle introduced Ms. Porter to Mr. Bishop, his friend and co-worker, who agreed to and did commit the murder. The State's theory of the case was that Mr. Coyle was an accessory before the fact who introduced Ms. Porter to Mr. Bishop for the purpose of facilitating the murder.

At trial, the State's primary witnesses, Detective Donald Anderson and Detective Sekou Hinton, testified about a suspicious pattern of telephone calls in which Mr. Coyle received a call from either Ms. Porter or Mr. Bishop, and immediately thereafter called the other person. The State introduced evidence that Mr. Coyle attended two meetings with Mr. Bishop and Ms. Porter prior to the murder. At the first meeting, Mr. Bishop allegedly agreed to commit the murder. At the second meeting, Ms. Porter purportedly supplied Mr. Bishop with the murder weapon.

On his own behalf, Mr. Coyle testified that he did not have any involvement in the murder, that Ms. Porter regularly spoke about having her husband killed, that he never believed Ms. Porter would seriously attempt to have her husband killed, and that he assumed Ms. Porter had been merely venting to him about her marital struggles, as was typical for her. Mr. Coyle testified that when Ms. Porter claimed to have finally hired a

- 4 -

hitman, he believed that the individual, Mr. Bishop, would simply become another person to whom Ms. Porter complained about her marriage.

The jury found Mr. Coyle guilty of all charges. Mr. Coyle filed a motion for new trial, which was denied. On June 18, 2012, the circuit court sentenced Mr. Coyle to life in prison for murder, twenty-five years concurrent for conspiracy to commit murder, and five years concurrent, without the possibility of parole, for use of a handgun in the commission of a crime of violence, with an effective date of March 6, 2010, given credit for time served.

**Petitioner's Initial Appeal and Postconviction Proceedings**

On July 6, 2012, Mr. Coyle's trial counsel, Roger L. Harris Jr., filed a notice of appeal.[1] On August 7, 2012, Brian M. Saccenti, then Acting Chief Attorney of the OPD Appellate Division, entered his appearance for purposes of the appeal only. Later, the OPD assigned a panel attorney, Brian T. Edmunds, to represent Mr. Coyle on appeal. Mr. Edmunds filed a notice, entering his appearance as an "Assigned Public Defender." On July 11, 2014, in an unreported opinion, the Appellate Court affirmed Mr. Coyle's convictions. See Coyle v. State, No. 0997, Sept. Term, 2012 (Md. Ct. Spec. App. July 11, 2014).

On June 29, 2020, Mr. Coyle filed a petition for postconviction relief contending that Mr. Edmunds rendered ineffective assistance of counsel by failing to file a petition for a writ of *certiorari*.[2] On October 22, 2020, the circuit court held a hearing on the petition.

---

[1] According to the State's answer to the petition for postconviction relief, Mr. Harris "was privately retained."

[2] Although not at issue in this Court, in the petition for postconviction relief, Mr.

At the hearing, Mr. Coyle's postconviction counsel submitted as an exhibit an affidavit that was written and signed by Mr. Edmunds. In the affidavit, Mr. Edmunds averred that he had discussed filing a petition for a writ of *certiorari* with "both the Office of the Public Defender and Mr. Coyle and was authorized to file a petition." Mr. Edmunds stated that "[it] was and remains [his] view that [] the Court of Special Appeals erred when it affirmed Mr. Coyle's conviction. [He] felt that some of the issues in the case presented questions for which the Court of Appeals should grant a writ of certiorari."

Mr. Edmunds averred that he had prepared a petition for a writ of *certiorari*, which was attached as an exhibit to the petition for postconviction relief. According to Mr. Edmunds, he had "worked around the clock" on the petition but had a difficult time getting the petition to the point that he felt it was sufficient. Mr. Edmunds averred that, on the due date, he "turned to finalizing the petition with the goal of revising it, shortening it, proofreading it, and sending it to the Office of the Public Defender by noon, in time for the Office to print and deliver it to" this Court. According to Mr. Edmunds, by noon he was "still struggling" with the petition and determined that he would continue to work on it and personally deliver it to the Court in Annapolis for filing, but that he experienced a range of difficulties that prevented him from making it to the Court on time. The difficulties

---

Coyle stated that he raised four issues on direct appeal: (1) whether the circuit court erred in excluding as inadmissible hearsay a statement by Mr. Bishop that Mr. Coyle did not participate in the murder; (2) whether the circuit court erred in excluding as inadmissible hearsay a videotaped statement of Ms. Porter's daughter; (3) whether the circuit court erred in limiting Mr. Coyle's presentation of character evidence; and (4) whether the circuit court erred in denying Mr. Coyle's motion for judgment of acquittal where the evidence was legally insufficient to sustain his convictions.

included a computer crash, heavy traffic on the Beltway on the way to Annapolis, and an "unexpected development in the morning related to the first day of school for [his] children." According to Mr. Edmunds, he called both the Clerk's Office and the OPD "[f]rom the road" "to see if anything could be done to get the petition timely to the Court[.]" Although he did not specifically mention this in the affidavit, in the end, Mr. Edmunds did not file the petition. Mr. Edmunds described having to inform Mr. Coyle of "it" as one of the "worst professional experiences of [his] career."

In an opinion issued on March 18, 2021, the circuit court denied Mr. Coyle's petition for postconviction relief. The circuit court found that the issues raised by Mr. Coyle's "assigned appellate counsel in the Court of Special Appeals were neither novel nor important from a public policy standpoint" and that "there [was] not the slightest possibility" that this Court would have granted *certiorari*.

On April 19, 2021, Mr. Coyle filed an application for leave to appeal from the circuit court's denial of his petition for postconviction relief, alleging that he was denied the right to the effective assistance of counsel under CP § 16-204. On November 17, 2021, the Appellate Court granted Mr. Coyle's application for leave to appeal.

**Opinion of the Appellate Court of Maryland**

On March 25, 2024, the Appellate Court affirmed the circuit court's judgment in an unreported opinion. See Coyle, 2024 WL 1250562, at *1. The Appellate Court construed the issue to be whether Mr. Coyle had the right to counsel and held that neither CP § 16-204 nor Maryland Rule 4-214(b) provide a defendant the right to counsel in filing a petition for a writ of *certiorari*. See id. at *6-7. The Appellate Court stated that Maryland Rule 4-

214(b) provides that "'[t]he representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari'" and that CP § 16-204 has not been amended in a way as to expand the right to counsel to a discretionary petition for a writ of *certiorari*. Id. at *6 (quoting Md. R. 4-214(b)). The Appellate Court concluded that the circumstances of this case are distinguishable from those of State v. Flansburg, 345 Md. 694, 694 A.2d 462 (1997), as the failure to file the motion for modification in Flansburg occurred after a probation revocation hearing, for which an express right to counsel exists under CP § 16-204. See Coyle, 2024 WL 1250562, at *5.

The Appellate Court also concluded that Mr. Coyle had not been deprived of due process under Article 24 of the Maryland Declaration of Rights due to his attorney's failure to file a petition for a writ of *certiorari*. See id. at *9. The Court noted that Article 24 is generally construed as being analogous to the Fourteenth Amendment of the United States Constitution. See id. at *8. The Court pointed out that, in Wainwright v. Torna, 455 U.S. 586 (1982) (per curiam), the Supreme Court of the United States held that the failure to timely file a writ of habeas corpus in federal court did not deprive the defendant of due process because the defendant did not have a constitutional right to counsel in a habeas matter. See Coyle, 2024 WL 1250562, at *8. The Appellate Court also pointed out that in Ross v. Moffitt, 417 U.S. 600 (1974), the Supreme Court held that the Fourteenth Amendment does not mandate that a defendant be appointed counsel for discretionary appeals in state or federal courts. See Coyle, 2024 WL 1250562, at *8. The Appellate Court concluded that, in light of the Supreme Court's holdings in Torna and Ross, Mr.

Coyle was not deprived of due process by his appointed counsel's failure "to timely file" a petition for a writ of *certiorari*. Id. at *9.

Because the Appellate Court concluded that Mr. Coyle did not have a right to counsel, the Court declined to reach the issue of whether Mr. Coyle was entitled to the *effective* assistance of counsel. See id. at *10-11. The Court noted, however, that Mr. Coyle's panel attorney's conduct likely fell below an objective standard of reasonableness. See id. at *12.

In a dissenting opinion, the Honorable Douglas R. M. Nazarian explained that, although he agreed that under existing law Mr. Coyle did not have a constitutional or statutory right to counsel at the *certiorari* stage,[3] in his view, once counsel was appointed, Mr. Coyle was entitled to effective representation. See id. at *13 (Nazarian, J., dissenting); see also CP § 16-208(c)(1). The dissent stated that counsel's failure to file the petition satisfied the deficient performance requirement of Strickland and concluded that, under the circumstances, the failure to file the petition prejudiced Mr. Coyle and that Mr. Coyle should be granted the opportunity to file a belated petition for a writ of *certiorari*. See Coyle, 2024 WL 1250562, at *13 (Nazarian, J., dissenting). The dissent expressed the view that conditioning prejudice on "a prediction" of what this Court would do "is to frame the prejudice question too broadly" and "[t]he only available remedy [] is the opportunity to file a belated petition[.]" Id. at *15 (Nazarian, J., dissenting). The dissent stated:

---

[3]The dissent stated that were it "writing on a blank slate," it would have adopted Justice Thurgood Marshall's dissenting view in Torna and concluded that a defendant has a constitutional right to counsel when pursuing discretionary appeals. Coyle, 2024 WL 1250562, at *13 (Nazarian, J., dissenting).

If the likelihood of a grant went from fifteen percent or twelve percent or five percent to absolute zero due to counsel's performance, Mr. Coyle was prejudiced, at least to the extent that counsel's failure deprived him categorically of the opportunity to have the Supreme Court consider, if deny, the petition on the merits. That's a narrow failure that can be remedied fully by a narrow remedy.

Id. (Nazarian, J., dissenting).

## Petition for a Writ of *Certiorari*

On May 6, 2024, Mr. Coyle petitioned for a writ of *certiorari*, raising the following three issues:

1.          Was Mr. Coyle denied his right, under the Public Defender statute, to the effective assistance of assigned public defender appellate counsel who failed to timely file a petition for writ of certiorari?

2.          When the Office of the Public Defender appointed counsel to Mr. Coyle and approved of assigned counsel's determination that a petition for writ of certiorari should be filed, was Mr. Coyle entitled to the effective assistance of counsel in filing such a petition?

3.          Must prejudice be presumed when, due to ineffective assistance of counsel, Mr. Coyle was denied his right to file a petition for writ of certiorari and did the post-conviction court err in holding that he must establish that the petition would have been granted?

On August 27, 2024, we granted the petition as to the second and third questions only. See Coyle, 488 Md. 386, 321 A.3d 784.

## I. The Right to Effective Assistance of Counsel under the Public Defender Act

### A. Standard of Review and Principles of Statutory Construction

"[S]tatutory interpretation is a question of law," and thus, we review the meaning of a statute *de novo*.  State v. Krikstan, 483 Md. 43, 64, 290 A.3d 974, 987 (2023) (citing Lawrence v. State, 475 Md. 384, 398, 257 A.3d 588, 596 (2021)).  In doing so, we follow "[t]he cardinal rule of statutory interpretation," namely, our goal is "to ascertain and effectuate the real and actual intent of the [General Assembly]."  State v. Bey, 452 Md. 255, 265, 156 A.3d 873, 878 (2017) (citation omitted); see also State v. Weems, 429 Md. 329, 337, 55 A.3d 921, 926 (2012) (same); State v. Johnson, 415 Md. 413, 421, 2 A.3d 368, 373 (2010) (same).

In resolving the parties' opposing positions with respect to whether Mr. Coyle was entitled to the effective assistance of counsel under the Act, we apply the following principles of statutory interpretation.  To ascertain legislative intent, we "start[] with the plain meaning of the statutory language in question."  In re M.P., 487 Md. 53, 67, 314 A.3d 348, 356 (2024) (cleaned up).  In interpreting the language of a statute, we begin by examining "the normal, plain meaning of the statute" to determine whether its language is "unambiguous[.]"  Bey, 452 Md. at 265, 156 A.3d at 878 (citation omitted).  "We begin with the normal meaning of the text because we presume that the General Assembly meant

---

[4]Because question 2 concerns the issue of whether Mr. Coyle was entitled to the effective assistance of counsel, we will address question 2 in Part I of the opinion and question 3 in Part II of the opinion.

what it said and said what it meant." M.P., 487 Md. at 67, 314 A.3d at 356 (cleaned up). "[W]here a term is not defined by statute, we may refer to the dictionary and give the words their ordinary meaning." State v. Wilson, 471 Md. 136, 160, 240 A.3d 1140, 1154 (2020) (cleaned up); see also Sabisch v. Moyer, 466 Md. 327, 366, 220 A.3d 272, 294 (2019) ("To ascertain the natural and ordinary meaning of [a] term[], we look to dictionary definitions as a starting point, as it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." (Cleaned up)).

If the language of the statute is unambiguous, we apply it "as written," neither adding nor deleting language to reflect an alternate intent not evidenced by the language of the statute. Bey, 452 Md. at 265, 156 A.3d at 878 (citation omitted). "This typically ends our analysis without resort to other rules of construction or sources outside of the statute itself, although the plain language of a statute must be viewed within the context of the statutory scheme to which it belongs," taking into consideration "the purpose, aim, or policy of the [General Assembly] in enacting the statute." M.P., 487 Md. at 67-68, 314 A.3d at 356 (cleaned up).

We interpret the statute "as a whole, so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory." Woodlin v. State, 484 Md. 253, 279, 298 A.3d 894, 849 (2023) (citation omitted). "[W]e do not construe a statute with forced or subtle interpretations that limit or extend its application." Bey, 452 Md. at 265, 156 A.3d at 878 (citation omitted). "We presume that the [General Assembly] intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent

with the statute's object and scope." Id. at 266, 156 A.3d at 879 (citation omitted). If the language of the statute is ambiguous, we must resolve the ambiguity by searching for "the purpose, aim, or policy of the [General Assembly] in enacting the statute[,]" *i.e.*, legislative intent, "in other indicia, including the history of the legislation[.]" Id. at 266, 156 A.3d at 878-79 (citation omitted).

## B. The Public Defender Act: Statutory Framework

### 1. Effective Assistance

CP § 16-201 provides as follows:

It is the policy of the State to:

(1) provide for the realization of the constitutional guarantees of counsel in the representation of indigent individuals, including related necessary services and facilities, in criminal and juvenile proceedings in the State;

(2) assure the effective assistance and continuity of counsel to indigent accused individuals taken into custody and indigent individuals in criminal and juvenile proceedings before the courts of the State; and

(3) authorize the Office of the Public Defender to administer and ensure enforcement of this title.

### 2. Representation to be Provided in Accordance with the Act

CP § 16-204 provides as follows:

(a) Representation of an indigent individual may be provided in accordance with this title by the Public Defender or, subject to the supervision of the Public Defender, by the deputy public defender, district public defenders, assistant public defenders, or panel attorneys.

(b)(1) Indigent defendants or parties shall be provided representation under this title in:

(i) a criminal or juvenile proceeding in which a defendant or party is alleged to have committed a serious offense;

(ii) a criminal or juvenile proceeding in which an attorney is constitutionally required to be present prior to presentment being made before a commissioner or judge;

(iii) a postconviction proceeding for which the defendant has a right to an attorney under Title 7 of this article;

(iv) any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result;

(v) a proceeding involving children in need of assistance under § 3-813 of the Courts Article; or

(vi) a family law proceeding under Title 5, Subtitle 3, Part II or Part III of the Family Law Article, including:

> 1. for a parent, a hearing in connection with guardianship or adoption;
>
> 2. a hearing under § 5-326 of the Family Law Article for which the parent has not waived the right to notice; and
>
> 3. an appeal.

(2)(i) Except as provided in subparagraph (ii) of this paragraph, representation shall be provided to an indigent individual in all stages of a proceeding listed in paragraph (1) of this subsection, including, in criminal proceedings, custody, interrogation, bail hearing before a District Court or circuit court judge, preliminary hearing, arraignment, trial, and appeal.

> (ii) Representation is not required to be provided to an indigent individual at an initial appearance before a District Court commissioner.

### 3. Panel Attorneys

Representation by a panel attorney is governed by CP § 16-208, which provides in

pertinent part as follows:

(b)(1) Except in cases in which an attorney in the Office provides representation, the district public defender, subject to the supervision of the Public Defender, shall appoint an attorney from an appropriate panel to represent an indigent individual.

(2) Panel attorneys shall be used as much as practicable.

(c)(1) The primary duty of a panel attorney is to the indigent individual represented by the panel attorney with the same effect and purpose as though privately engaged by that individual and without regard to the use of public funds to provide the service.

(2) A panel attorney shall report to the Office as the regulations of the Public Defender require.

. . .

CP § 16-205 governs the termination of representation by the OPD or a panel attorney appointed by the OPD and states the following: "Representation of an indigent individual by the Office or by a panel attorney shall continue until the final disposition of the case or until the assigned attorney is relieved by the Public Defender or order of the court in which the case is pending."

### C. Maryland Rule 4-214(b)

Maryland Rule 4-214(b) concerns appointed counsel and provides as follows:

When counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings, including but not limited to custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification or review of sentence or new trial, and appeal. The Public Defender may relieve appointed counsel and substitute new counsel for the defendant without order of court by giving notice of the substitution to the clerk of the court. Representation by the Public Defender's office may not be withdrawn until the appearance of that office has been stricken pursuant to section (d) of this Rule. The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari, petition to expunge records, and petition for post conviction relief.

**D. Mr. Coyle is Entitled to the Effective Assistance of Counsel Under the Act**

**1. Whether Mr. Edmunds was Authorized by the OPD to File a Petition for a Writ of *Certiorari***

Mr. Coyle contends that because the OPD assigned a panel attorney and authorized the filing of a petition for a writ of *certiorari*, he was entitled to the effective assistance of counsel under the Act and that, in failing to file the petition, his attorney's conduct constituted ineffective assistance of counsel. The State asserts, among other things, that the record does not adequately show that the OPD authorized Mr. Coyle's attorney to file a petition for a writ of *certiorari* and that this is a reason he is not entitled to effective assistance of counsel under the Act. We disagree with the State's position for two reasons: the State's argument on this point is unpreserved and the record demonstrates otherwise.

In its brief in this Court, the State advises that it accepts Mr. Coyle's statement of facts for the facts underlying the postconviction proceeding. These facts include the representation that Mr. Edmunds was a panel attorney appointed to represent Mr. Coyle in the filing of a petition for writ of *certiorari*.[5] Similarly, in its brief in the Appellate Court, the State advised that it accepted "the Statement of Facts in [Mr.] Coyle's brief, as supplemented and modified in the Argument below." On brief in the Appellate Court, Mr. Coyle argued that because he was "assigned a public defender on appeal who was

_____

[5]In the statement of facts section of his brief, Mr. Coyle describes Mr. Edmunds as "a panel attorney appointed by the [OPD] to represent [him] on his direct appeal and in the filing of a Petition for Writ of Certiorari." Mr. Coyle explains that, "[a]t the post-conviction hearing, counsel for Mr. Coyle introduced as Petitioner's Exhibit 1, an affidavit written and signed by Brian Edmunds, a panel attorney appointed by the [OPD] to represent Mr. Coyle on his direct appeal and in the filing of a Petition for Writ of Certiorari."

- 16 -

authorized by the Office of the Public Defender to file a cert petition and because counsel failed to timely do so, he was denied the effective assistance of counsel." In the Appellate Court, the State did not contend that Mr. Edmunds had not been authorized by the OPD to file a petition for a writ of *certiorari*.

The State also did not raise a lack of authorization argument in the circuit court in its response to Mr. Coyle's petition for postconviction relief.[6] "Ordinarily, an appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Md. R. 8-131(a); <u>see also</u> Md. R. 8-131(b)(1) ("[I]n reviewing a decision rendered by the Appellate Court . . ., the Supreme Court ordinarily will consider only an issue that has been raised in . . . any cross-petition and that has been preserved for review by the Supreme Court."). Considered against the circumstances above, the State's argument is plainly not preserved.

Aside from the issue of preservation, the content of Mr. Edmund's affidavit, which was admitted into evidence during the postconviction hearing, supports the conclusion that

---

[6]In its answer to the petition for postconviction relief, with respect to Mr. Edmunds, the State argued only:

> The Defendant asserts first that his appellate counsel was ineffective for failing to timely file a Petition for Writ of Certiorari to the Court of Appeals from the opinion of the Court of Special Appeals affirming the convictions in this case. The State contests the assertion and demands strict proof of the factual assertion. In addition, the State asserts that the Defendant will be unable to demonstrate that there is a substantial possibility under Strickland that the Court of Appeals would have granted certiorari and reversed the judgement [sic] of the Court of Appeals.

(Cleaned up).

the OPD authorized him to file a petition for a writ of *certiorari* on Mr. Coyle's behalf. Mr. Edmunds averred that he had discussed filing a petition for a writ of *certiorari* with "both the [OPD] and Mr. Coyle and was authorized to file a petition." In the affidavit, in describing the events leading up to his failure to file the petition, Mr. Edmunds stated that he had expected to send the petition to the OPD for that office to make the necessary copies and deliver the petition to the Court for filing, but on the day the petition was due, he decided to file it himself. Mr. Edmunds also stated that when he experienced a traffic delay, he contacted the OPD to see what could be done to get the petition filed. Mr. Edmund's affidavit demonstrates that he expected the OPD to file the petition after he prepared it and that he sought assistance from the OPD when he encountered difficulty in filing the petition, which are circumstances from which it is reasonable to infer that he was authorized by the OPD to file the petition.

## 2. Statutory Construction

### *a. Plain Language*

Mr. Coyle argues that, in addition to being entitled to the effective assistance of counsel because the OPD authorized his panel attorney to file a petition for a writ of *certiorari*, he is entitled under the Act to the effective representation of counsel "until the assigned attorney is relieved by the Public Defender or order of the court in which the case is pending." (Cleaned up). According to Mr. Coyle, although this position appears to conflict with Maryland Rule 4-214, the statutory provision governs.

The State responds that, even if the OPD was involved in the authorization of a *certiorari* petition, Mr. Coyle did not have a constitutional or statutory right to counsel in

filing a petition for a writ of *certiorari*, and that in the absence of a right to counsel, there is no right to the effective assistance of counsel. In the State's view, the right to the effective assistance of counsel is derivative of the right to counsel itself. The State also asserts that the issue of whether Mr. Coyle had a right to counsel under the Act is not preserved and is outside of the scope of this Court's grant of *certiorari*.[7]

To determine whether a defendant is entitled to the effective assistance of counsel under the Act where the OPD has assigned a panel attorney and authorized the attorney to file a petition for a writ of *certiorari*, we begin with the plain language of the statute. CP § 16-201(1) provides that it is the policy of the State to "provide for the realization of the constitutional guarantees of counsel in the representation of indigent individuals, including related necessary services and facilities" in criminal and juvenile proceedings. CP § 16-201(2) expressly states that it is the policy of the State to "assure the effective assistance and continuity of counsel to . . . indigent individuals in criminal and juvenile proceedings before the courts of the State[.]" By its clear terms, the statute gives effect to the policy of both providing the "constitutional guarantees of counsel" and assuring "the effective assistance" of counsel to indigent people in criminal proceedings before the courts of our State. The assurance of effective assistance of counsel is not susceptible to multiple interpretations.

We need look no further than its plain and unambiguous language to conclude that,

---

[7]For reasons explained below, we do not reach the issue of whether the Act provides a right to counsel in filing a petition for a writ of *certiorari*. Consequently, there is no need to address the State's contention that Mr. Coyle failed to preserve the question of whether he had a right to counsel under the Act.

- 19 -

CP § 16-201(2) sets forth the unqualified policy of guaranteeing the effective assistance of counsel to indigent criminal defendants under the Act. A plain reading of CP § 16-201(2) does not link the goal of assuring the effective assistance of counsel for indigent defendants to defendants having a right to counsel under the Act. A plain reading of CP § 16-201(2) leaves no ambiguity as to the General Assembly's intent that indigent defendants be guaranteed the effective assistance of counsel in criminal and juvenile proceedings. Based on the plain language of the statute itself, we conclude that where an attorney is authorized under the Act to represent an indigent defendant and takes responsibility for filing a petition for a writ of *certiorari*, the attorney must render effective assistance of counsel.

To be clear, we do not hold that under the Act a defendant is entitled to representation in filing a petition for a writ of *certiorari*; we hold only that where an attorney is authorized or designated by the OPD under the Act to file a petition for a writ of *certiorari* on a person's behalf, the person is entitled to the effective assistance of counsel. To preclude a finding of ineffective assistance of counsel where an attorney was designated by the OPD to file a petition for a writ of *certiorari* but was unaware of the designation, we add that the attorney must also be aware of the authorization and have accepted the assignment.

Had the Act contained language stating only that it is the policy of the State to provide the constitutional guarantees of counsel, we may have concluded that the language is ambiguous with respect to whether the General Assembly intended to provide indigent defendants the effective assistance of counsel in the absence of the right to counsel. The Act does not contain a definition of the phrase "constitutional guarantees of counsel" as

used in CP § 16-201(1) and the phrase, read alone, is ambiguous because it is susceptible to more than one reasonable interpretation. One possible interpretation of the phrase is that it refers to the separate provisions of the federal constitution that provide the right to counsel.[8] Another possible interpretation is that the constitutional guarantees of counsel include the Sixth Amendment right to a fair trial and the right to the effective assistance of counsel in ensuring a fair and impartial trial. See United States v. Wade, 388 U.S. 218, 226-27 (1967) ("The security of [the right to a fair trial] is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment[.]").

However, due to the separate provision of the Act assuring the effective assistance of counsel, we need not stray from the language of the statute to conclude that, regardless of the meaning of the phrase constitutional guarantees of counsel, the language of the statute is unambiguous with respect to the policy of the State to guarantee the effective assistance of counsel for indigent individuals in criminal proceedings. See CP § 16-201(2). Although no definition of the word "assure" is necessary to understand the meaning of the word, we note that the word "assure" is defined as "to make sure or certain" or "to make certain the coming or attainment of: guarantee[.]" *Assure*, Merriam-Webster (2025), https://www.merriam-webster.com/dictionary/assure [https://perma.cc/C3ED-6C9L] (capitalization omitted). Based on its plain language, the statute provides that it is the

---

[8]The constitutional right to counsel stems from separate constitutional provisions. The most well known of these is the Sixth Amendment, referenced above. The Sixth Amendment right to counsel is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. In addition to the Sixth Amendment right to counsel, the Supreme Court has found a right to counsel within the Fifth Amendment's privilege against self-incrimination. See Miranda v. Arizona, 384 U.S. 436, 471 (1966).

policy of the State to guarantee the effective assistance of counsel to indigent individuals in criminal proceedings and contains no caveat foreclosing application of the policy where the designation of counsel is discretionary under the Act.

It is undisputed that, regardless of whether the Act provides a right to counsel for filing a petition for a writ of *certiorari*, the OPD may represent an indigent criminal defendant in filing a petition or appoint a panel attorney to do so. In its brief before this Court, the State recognizes, as we do, that the OPD possesses the ability to represent an indigent criminal defendant in filing a petition for a writ of *certiorari* or appoint a panel attorney to do so.[9] Given that CP § 16-201(2) makes clear that it is the policy of the State to provide indigent criminal defendants the effective assistance of counsel and, under the Act, the OPD may designate a panel attorney to represent a defendant in filing a petition for a writ of *certiorari*, applying the plain language of the statute leads to the conclusion that, once designated, an attorney must render the effective assistance of counsel in filing a petition for a writ of *certiorari*. To interpret the policy of providing effective assistance of counsel to be derivative of a right to counsel under the Act, or no different than the policy concerning the constitutional guarantees of counsel set forth in CP § 16-201(1), would render the language in CP § 16-201(2) meaningless or surplusage and read into the Act language that does not exist.

By the plain language of the statute, the policy of assuring the effective assistance of counsel set forth in CP § 16-201(2) is not limited to circumstances in which there is a

---

[9]The State contends instead that Mr. Coyle's argument that he is entitled to the effective assistance of counsel in light of the discretionary appointment is wrong.

right to counsel under the Act. Concluding otherwise would result in the illogical outcome that, where a right to representation exists under the Act, a panel attorney must provide effective assistance of counsel but that where a panel attorney is appointed by the OPD and appointment under the Act is discretionary, the panel attorney is not required to provide effective assistance of counsel. This outcome would not only be illogical; it would also contradict the policy of the State to provide effective assistance of counsel to indigent individuals in criminal proceedings before the courts of the State. See Bey, 452 Md. at 266, 156 A.3d at 879 (stating that "we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope[,]" and in doing so, "the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense" (citation omitted)).

### b. The Legislative History of the Act

Although our inquiry could end at this point because the language of the Act is unambiguous and we do not need to examine legislative history, the legislative history of the Act confirms the conclusion that Mr. Coyle is entitled to the effective assistance of counsel in having a petition for a writ of *certiorari* filed. In 1971, the General Assembly enacted the Public Defender Act, which created the OPD. See 1971 Md. Laws 485-86 (Ch. 209, S.B. 454). In two separate places, in enacting the original version of the Act, the General Assembly stated that a Public Defender system or the OPD was created to assure the effective assistance of counsel to indigent defendants. In the first paragraph of the session law, the General Assembly stated that the Act was to be added to the Annotated Code of Maryland as a new Article 27A under the title "Public Defender" to create

a Public Defender System for the State of Maryland so as to assure effective assistance and continuity of counsel and related services to indigent accused persons taken into custody and to indigent defendants in criminal, juvenile, appellate, post conviction and other proceedings instituted before the Courts of the State of Maryland[.]

1971 Md. Laws 485-86.

The original version of the Act contained the following "Declaration of Policy and Intent" as Art. 27A, § 1:

It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the Courts of the State of Maryland, and to authorize the Office of the Public Defender to administer and assure enforcement of the provisions of this Article in accordance with its terms.

1971 Md. Laws 486.

In 2008, the Act was recodified in the Criminal Procedure Article as CP §§ 16-101 to 16-403. See 2008 Md. Laws 233-34 (Ch. 15, S.B. 37). From its enactment in 1971 through recodification in 2008 to now, the Act has continued to state, in one form or another, that its purpose or the policy of the State is to "assure the effective assistance and continuity of counsel to indigent accused individuals taken into custody and indigent individuals in criminal and juvenile proceedings[.]" CP §16-201(2). There has been no qualification of this intent as being dependent upon whether counsel is appointed as a matter of right under the Act or whether the OPD exercises the discretion to designate counsel. It is clear that since the Act's inception, the General Assembly has intended that

- 24 -

the Act guarantee the effective assistance of counsel to indigent individuals who are represented by counsel under the Act.

In the original version of the Act, the General Assembly expressly stated that representation shall be provided in criminal proceedings, where an indigent individual is charged with a serious criminal offense, before, among other courts, the Court of Special Appeals of Maryland and the Court of Appeals of Maryland. See 1971 Md. Laws 488 (Art. 27A, § 4(b)(2)). In 1976, the words "and the Court of Special Appeals" were substituted for "and the Court of Special Appeals of Maryland, and the Court of Appeals of Maryland" in Art. 27A, § 4(b)(2). 1976 Md. Laws 1244 (Ch. 472, H.B. 1102). The amendment was made as part of a corrective bill that replaced references to the Court of Appeals of Maryland with the Court of Special Appeals, in light of the circumstance that appeals are to the Court of Special Appeals. See id.; see also 1973 Md. Laws 82-83 (Ch. 56, H.B. 775) (eliminating appeals as of right to the Court of Appeals after January 1, 1975). Although, at the time of the 1976 amendment, reference to proceedings in the Court of Appeals being one of the courts in which representation shall be provided to indigent defendants under the Act was deleted, significantly, no change or amendment was made to the language of the Act stating that it is the policy of the State to assure the effective assistance of counsel. See 1976 Md. Laws 1244; Md. Code (1976 Repl. Vol., 1976 Supp.), Art. 27A, § 1.

In 2008, the General Assembly amended the Act by, among other things, removing from it language stating that representation shall be provided "before the District Court of Maryland, the various circuit courts within the State of Maryland, and the Court of Special Appeals of Maryland." See 2008 Md. Laws 233, 332-33. After the 2008 amendment, Md.

Code Ann., Crim. Proc. (2001, 2008 Repl. Vol.) § 16-204(b)(2) provided that representation shall be provided at all stages of the proceedings listed in paragraph (1), which included proceedings in which a defendant is alleged to have committed a serious criminal offense. See id. at 333 (Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol.) § 16-204(b)(1)(i)). A Revisor's Note to the 2008 recodification of CP § 16-204 states that the phrase "before the District Court of Maryland, the various circuit courts within the State of Maryland, and the Court of Special Appeals" was "deleted as surplusage[,]" and that the section was new language derived without substantive change from former Art. 27A. 2008 Md. Laws 333. Again, no change or amendment was made to the language of the Act stating that it is the policy of the State to assure the effective assistance of counsel.[10]

In 2012, the General Assembly amended the Act by, among other things, splitting CP § 16-204(b)(2) into two subparagraphs, adding in CP § 16-204(b)(2)(i) the opening clause "[e]xcept as provided in subparagraph (ii) of this paragraph" to what had been CP § 16-204(b)(2), adding "bail hearing before a District Court or circuit court judge" as one of the example proceedings in CP § 16-204(b)(2)(i), and continuing to provide that "representation shall be provided to an indigent individual in all stages of a proceeding

---

[10]In its opinion in this case, the Appellate Court stated that the omission of language referring to representation in the "District Court of Maryland" and the "Court of Special Appeals" from CP § 16-204(b)(1)(i) could potentially give rise to an argument that the General Assembly intended "to expand the scope of public defender services on appeal." Coyle, 2024 WL 1250562, at *6. The Appellate Court concluded, however, that the Revisor's Note stating that the revisions were made without substantive change "directly refute[d] Coyle's claim that the amendment in 2008 expands the scope of representation to all stages of an appeal." Id. The Appellate Court's analysis of the significance or lack of significance of the 2008 amendment is of no moment as it hinges on the premise that the right to effective assistance of counsel under the Act is dependent upon the right to counsel.

listed in paragraph (1) of this subsection[.]" <u>See</u> 2012 Md. Laws 3404, 3414 (Ch. 505, H.B. 261).[11] Like other amendments of the Act, these amendments are not of consequence to the instant matter.

The purpose of our review of the legislative history of the Act is not to ascertain whether a right to counsel exists under the Act for filing a petition for a writ of *certiorari*. Our review of the legislative history is to ascertain whether the General Assembly intended that indigent defendants in criminal cases have the effective assistance of counsel where representation is provided under the Act. The legislative history of the Act demonstrates that as early as the original enactment of the Act in 1971, the General Assembly intended to assure that indigent individuals have the effective assistance of counsel in criminal proceedings before the courts of our State, including this Court, where representation is provided to such individuals under the Act. <u>See</u> 1971 Md. Laws 486 (Art. 27A, § 1); CP § 16-201(2).

**3. Maryland Rule 4-214(b) has No Bearing on Mr. Coyle's Right to Effective Assistance of Counsel under the Act**

To be sure, as the State points out, Maryland Rule 4-214(b) provides that representation by appointed counsel does not extend to discretionary proceedings, such as petitions for writs of *certiorari*. Read in the context of the Rule as a whole, however, the

---

[11]After 2012, the General Assembly amended the Act during the 2020 legislative session. The amendment concerned only amending part of the definition of "serious offense" in CP § 16-101(h)(2) so that a serious offense means "a misdemeanor or offense punishable by confinement" and not a misdemeanor or offense punishable by confinement for more than 3 months or a fine of more than $500. 2020 Md. Laws 1868 (Ch. 369, H.B. 918).

language simply means that where appointed counsel has entered an appearance in criminal proceedings, the attorney's representation does not extend or carry over for the purpose of filing a petition for a writ of *certiorari*, unless the attorney's appearance is reentered in the matter. By its plain meaning, the language of Maryland Rule 4-214(b) does not purport to limit an individual's right to counsel or right to effective assistance of counsel under the Act. Read in context, the language of Maryland Rule 4-214(b) that the State relies upon— that representation by appointed counsel does not extend to discretionary proceedings, such as a petition for a writ of *certiorari*—means that the provision of the Rule in the preceding sentence, stating that "[r]epresentation by the Public Defender's office may not be withdrawn until the appearance of that office has been stricken pursuant to section (d) of this Rule[,]" does not extend to representation by appointed counsel in discretionary proceedings such as the filing of a petition for a writ of *certiorari*.

To the extent that there is any ambiguity, we examine the Rule's history. The rulemaking history of Maryland Rule 4-214 demonstrates that when earlier versions of the Rule were adopted, the Rule concerned whether an entry of appearance by appointed counsel should be deemed to extend to representation for the filing of a petition for a writ of *certiorari*.[12] The predecessors to Maryland Rule 4-214 were Rules 723, 719, and 725. Rule 723, titled "Arraignment," was recommended to the Court in the Twelfth Report of the Standing Committee on Rules, was adopted in 1956, and became effective on January

---

[12]The current version of Maryland Rule 4-214 was adopted on February 16, 2017, and became effective on July 1, 2017. See Supreme Court of Maryland, Rules Order at 3-4, 19-20 (Feb. 16, 2017), https://www.mdcourts.gov/sites/default/files/rules/order/ro192.pdf [https://perma.cc/EWR2-VBCX].

1, 1957.  <u>See</u> Rules Committee, Twelfth Report at 4.  Rule 723 provided in relevant part as

follows:

> **Arraignment.**
>
> a. *How Made.*
> . . .
>
> b. *Assignment of Counsel.*
> If the defendant appears in court without counsel, the court shall advise him
> of his right to obtain counsel.  Unless he elects to proceed without counsel,
> the court shall, in all capital cases and other serious cases, assign counsel to
> defend him.
>
> c. *Record to Show Compliance.*
> . . .

In the Twentieth Report of the Standing Committee on Rules, the Committee

recommended the adoption of Rule 719, titled "Arraignment," which contained four

sections labelled as follows: "a. *How Made*," "b. *Assignment of Counsel*," "c. *Time to*

*Plead*," and "d. *Record to Show Compliance*."  Rule 719 replaced what had been Rule 723

and became effective on January 1, 1962.  Rule 719(b)(4) provided as follows:

> Counsel—Duration of Representation.
> When counsel is appointed by the court to represent an accused, the authority
> and duty of such counsel shall continue from the date of such appointment
> until the imposition of sentence.  Such counsel shall also have authority to
> note an appeal to the Court of Appeals, if so directed by the accused.

In the Twentieth Rules Report, in recommending changes to Chapter 700, the Committee

advised that "Chapter 700 (Criminal Causes) has been completely rewritten[,]" and that the

rules had been "expanded to include all procedural aspects of a criminal cause in the trial

courts of the State."  Rules Committee, Twentieth Report at 1 (Sept. 1961).

In 1972, in the Forty-Third Report of the Standing Committee on Rules of Practice

- 29 -

and Procedure, the Committee recommended several amendments to Rule 719. Among the amendments, the Committee recommended that Rule 719 be amended to include a new section (d), titled "Counsel – Extent of Duty," to provide:

> Whether counsel for an indigent is a representative of the Office of the Public Defender or an attorney appointed by the Office of the Public Defender or by the court, his representation shall extend to all stages in the proceedings, including custody, interrogation, preliminary hearing, arraignment, trial and appeal, if any, and shall continue until the final disposition of the cause, or until the appointed attorney is relieved by the Office of the Public Defender or by order of the court in which the cause is pending.

Rules Committee, Forty-Third Report at 18-19 (Mar. 16, 1972). Art. 27A, § 4(d) was listed as a cross reference. See id. at 19. Art. 27A, § 4(d) provided that representation by the OPD or by an attorney appointed by the OPD "shall continue until the final disposition of the cause, or until the assigned attorney is relieved by the Public Defender or by Order of the Court in which the cause is pending." In a Rules Order dated May 8, 1972, this Court adopted amendments to Rule 719, including new subsection (d). See Supreme Court of Maryland, Rules Order at 1-2, 14-7 (May 8, 1972). The amendments took effect on June 1, 1972. See id. at 3.

In the Fifty-Third Report of the Standing Committee on Rules of Practice and Procedure, dated December 29, 1975, the Committee recommended the adoption of Rule 725, titled "Defense Counsel," along with other Rules in Chapter 700 (Criminal Causes). Rules Committee, Fifty-Third Report (Dec. 29, 1975), 3 Md. Reg. 8, 10, 14 (Jan. 7, 1976). Proposed Rule 725 contained three sections: "a. Appearance," "b. Appointed Counsel— Extent of Duty," and "c. Striking Appearance." 3 Md. Reg. 14. In a Rules Order dated January 31, 1977, this Court adopted the Rules proposed in the Fifty-Third Report,

including proposed Rule 725. <u>See</u> Supreme Court of Maryland, Rules Order (Jan. 31,

1977), 4 Md. Reg. 235, 242 (Feb. 16, 1777). As adopted, Rule 725(b) provided:

> When counsel is appointed by the Public Defender or by the court, his representation extends to all stages in the proceedings, including, but not limited to, custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification or review of sentence or new trial, and appeal, or until he is relieved by the Public Defender or by order of the court in which the cause is pending. The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including petition for writ of certiorari, petition to expunge records and petition for post conviction relief.

<u>Id.</u> at 242. The amendments took effect on July 1, 1977. <u>See</u> <u>id.</u> at 235.

In the Fifty-Third Report, the Committee had advised this Court that the proposed

Rules in Chapter 700 were "the fruit of a project that began in September, 1973[.]" 3 Md.

Reg. 8. The minutes from a meeting of the Committee held on December 28, 1973, indicate

that the Committee "took up some administrative details[,]" including one matter described

as follows:

> At the May 1973 meeting of the committee a conflict between Rule 719 and Rule 751 was noted. Rule 751 provides that the responsibility of counsel continues until relieved by the court, whereas Rule 719 d allows an appointed attorney to be relieved by the Public Defender or by order of court. . . . Upon reconsideration the committee elected to refer this matter back to the Chapter 700 Subcommittee.

The minutes of a meeting of the Criminal Rules Subcommittee of the Committee

held on November 22 and 23, 1974, indicate that the Subcommittee noted that then existing

Rules 751 (Defense Attorney – Striking Appearance) and 719 (Arraignment – Appointment

of Counsel) were inconsistent. The Subcommittee "agreed. . . that the two rules should be

combined." At a Rules Committee meeting on November 7, 1975, the Committee

approved Chapter 700 – Circuit Criminal Rules. At that time, new Rule 725 was approved and contained language stating that when counsel is appointed by the Public Defender or by the court, representation shall extend to all stages in the proceedings, but that the representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings, including a petition for a writ of *certiorari*.

The history of Maryland Rule 4-214 demonstrates that the intent of the Rules Committee in developing the language of what is now Maryland Rule 4-214(b) and this Court in adopting the Rule was not to interpret whether the Act provided a right to counsel for indigent defendants in filing a petition for a writ of *certiorari* but rather to make clear that procedurally, when counsel is appointed in a criminal case, representation by appointed counsel, *i.e.*, the attorney's entry of appearance, does not automatically extend to discretionary proceedings.[13]

### E. Case Law of the Supreme Court of the United States

The Supreme Court's case law concerning the Sixth Amendment right to counsel in discretionary appellate proceedings does not govern the question of whether Mr. Coyle is entitled to effective assistance of counsel under the Act. In Ross, 417 U.S. 610, 612, 617-

---

[13]In Flansburg, 345 Md. at 702-03, 694 A.2d at 466, we observed that Maryland Rule 4-214(b) "states that representation by the Public Defender's Office or by court-appointed counsel 'extends to all stages in the proceedings[,]'" and "seems to require representation by the Public Defender with regard to any and all timely motions for modification of sentence, regardless of when they occur." Although we concluded that the respondent had a right to counsel in filing a motion for modification of sentence under the statutory language of the Act referring to all stages of the proceedings, even without the benefit of having reviewed the Rule's history, we stopped short of concluding that Maryland Rule 4-214(b) independently conferred a right to counsel.

18, a case discussed by the Appellate Court, the Supreme Court of the United States held that neither the Due Process Clause nor the Equal Protection Clause of the Fourteenth Amendment require appointment of counsel for indigent defendants in discretionary state court proceedings or applications for review in the Supreme Court. See Ross, 417 U.S. at 610, 612, 617-18. The Supreme Court explained that at trial the right to counsel is fundamental because a trial may "convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt[,]" and a defendant cannot be assured a fair trial without access to an attorney. Id. at 610. The Court concluded, though, that the Fourteenth Amendment's Due Process Clause does not require states to provide defendants with counsel in discretionary appeals to state supreme courts because the purpose of such proceedings is to overturn a prior determination of guilt. See id. The Court stated:

> The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analysis.

Id. at 611 (citation omitted).

The Court concluded, however, that it did not believe that the Equal Protection Clause requires the State "to provide free counsel for indigent defendants seeking to take discretionary appeals to the North Carolina Supreme Court, or to file petitions for certiorari in this Court." Id. at 612. The Court stated that any impediment to discretionary appellate review incurred by an indigent defendant is substantially less than that incurred by the

denial of counsel for an appeal as of right. See id. at 614-16. Under this rationale, the

Court held that the Fourteenth Amendment's Equal Protection Clause does not require that

an indigent defendant be provided with free counsel in discretionary appeals to state

supreme courts. See id. at 612, 616.[14]

In Torna, 455 U.S. 586, 586-88, another case discussed by the Appellate Court,

where the district court denied a state prisoner's habeas corpus petition alleging the denial

of the effective assistance of counsel because an application for *certiorari* filed by private

counsel had been dismissed by the Supreme Court of Florida as untimely, the Supreme

Court held, in a brief *per curiam* opinion, that because a criminal defendant does not have

a constitutional right to counsel to pursue a discretionary state appeal, the defendant could

not have been deprived of the effective assistance of counsel under the Sixth Amendment.

The Court stated:

> In *Ross v. Moffitt,* [] this Court held that a criminal defendant does not have
> a constitutional right to counsel to pursue discretionary state appeals or
> applications for review in this Court. Respondent does not contest the
> finding of the District Court that he had no absolute right to appeal his
> convictions to the Florida Supreme Court. Since respondent had no
> constitutional right to counsel, he could not be deprived of the effective
> assistance of counsel by his retained counsel's failure to file the application
> timely.

---

[14]In a dissenting opinion, the Honorable William O. Douglas stated that there is "no logical basis for differentiation between appeals of right and permissive review procedures in the context of the Constitution and the right to counsel." Ross, 417 U.S. at 619 (Douglas, J., dissenting) (quoting Moffitt v. Ross, 483 F.2d 650, 653 (4th Cir. 1973)). The dissent pointed out that due to the highly specialized nature of *certiorari* filings, an indigent defendant's right to counsel is especially significant at this stage in the appellate process. See id. at 621 (Douglas, J., dissenting).

Id. at 587-88 (footnotes omitted).[15]

Although the State cites Ross and relies on Torna for the proposition that Mr. Coyle did not have the right to counsel to pursue a discretionary appeal and therefore could not be deprived of the effective assistance of counsel, this case does not involve a question of whether a defendant is entitled under the Sixth Amendment to the effective assistance of counsel in discretionary proceedings. Nor does this case involve an application of the Equal Protection or Due Process Clauses under the Fourteenth Amendment. The issue in this case pertains to the right to effective assistance of counsel under the Maryland Public Defender Act, not the United States Constitution, and, as such, disposition of the case is not controlled by holdings of the Supreme Court of the United States in cases such as Ross and Torna.[16]

## F. Case Law from Other Jurisdictions

Similarly, we are not persuaded that case law from other jurisdictions supports the

---

[15]In a dissenting opinion, the Honorable Thurgood Marshall stated that he would have concluded that a defendant has a constitutional right to counsel to pursue discretionary state appeals, particularly given that review in a state's highest court "may be the most meaningful review a conviction will receive." Torna, 455 U.S. at 588 (Marshall, J., dissenting).

[16]Because this matter is resolved under the Act, we need not address whether Article 21 of the Maryland Declaration of Rights may provide the right to the effective assistance of counsel in the filing of a petition for a writ of *certiorari*. Given that the plain language and legislative history of the Act are clear, based on the principle of constitutional avoidance, we do not reach the question of whether Article 21 of the Maryland Declaration of Rights provides a right to the effective assistance of counsel in filing a petition for a writ of *certiorari* in a criminal case. See Blake v. State, 485 Md. 265, 305, 301 A.3d 1, 25-26 (2023) ("It is this Court's well-established policy to decide constitutional issues only when necessary. Even if a constitutional issue is properly raised and decided at the trial level, this Court will not reach the constitutional issue if it is unnecessary to do so." (Cleaned up)).

position that absent a right to counsel under the Act for filing a petition for a writ of *certiorari*, Mr. Coyle was not entitled to the effective assistance of counsel. The State discusses People v. Williams, 736 P.2d 1229 (Colo. Ct. App. 1986), and Kargus v. State, 169 P.3d 307 (Kan. 2007), as standing for the proposition that Mr. Coyle's argument could only prove successful where it has been explicitly determined that there is a statutory or constitutional right to counsel at the *certiorari* stage. In Kargus, 169 P.3d at 313, 320, the Supreme Court of Kansas held that an indigent defendant's statutory right to effective assistance of counsel is denied when counsel fails to honor the defendant's request to file a petition for writ of *certiorari*. And in Williams, 736 P.2d at 1231, the Colorado Court of Appeals held that an indigent defendant was denied the statutory right to counsel after counsel failed to file a petition for rehearing of the appellate court's prior decision, thus precluding *certiorari* review by the state supreme court, which was not discretionary because Colorado had a statute that provided that review by *certiorari* petition was an application of right. In both Williams and Kargus, an appellate court concluded that a defendant's statutory right to counsel had been denied based on an attorney's failure to act.[17] Cases like these neither add nor subtract from our conclusion that Mr. Coyle is entitled to the effective assistance of counsel in filing a petition for a writ of *certiorari* where a panel attorney is authorized under the Act to represent him in doing so.

---

[17]In addition, the State contends that, although Mr. Coyle is correct that the Supreme Court of Hawaii has held that "the failure of appellate counsel to timely file a petition for writ of certiorari after informing her client that she would so warranted reversal," see Villados v. State, 477 P.3d 826, 835 (Haw. 2020), the holding is not instructive because Hawaii has "recognized a state constitutional right to counsel in seeking certiorari review" and Maryland has not. (Citing State v. Uchima, 464 P.3d 852, 863-64 (Haw. 2020)).

- 36 -

## G. Relevant Maryland Case Law

In <u>Flansburg</u>, 345 Md. at 696, 694 A.2d at 463, this Court considered whether the respondent had a right to the effective assistance of counsel with respect to a motion for modification of sentence under Maryland Rule 4-345(b) after the imposition of sentence at a probation revocation proceeding. We held that the respondent had a right to counsel under the Act and the Maryland Rules with respect to a motion for modification of sentence, which included the right to the effective assistance of counsel. <u>See id.</u> at 699, 703, 694 A.2d at 465, 467. In concluding that the respondent had a right to the effective assistance of counsel with respect to a motion for modification of sentence, we stated that the "[e]ntitlement to assistance of counsel would be hollow indeed unless the assistance were required to be effective." <u>Id.</u> at 703, 694 A.2d at 467 (cleaned up). Thus, we afforded the respondent the postconviction remedy of permission to file a belated motion for reconsideration of sentence. <u>See id.</u> at 705, 694 A.2d at 468.

To be sure, in <u>Flansburg</u>, we concluded that under the Act, defendants have a right to counsel at probation revocation hearings, which extends to representation in motions for modification of sentence and includes the right to effective assistance of counsel, because otherwise the right to counsel would be meaningless, and here we do not make a corollary finding with respect to a right to counsel. By way of analogy, though, where an attorney is designated or authorized by the OPD, pursuant to its discretionary authority to provide representation under the Act to indigent defendants, the representation would be "hollow[,]" *i.e.*, meaningless, unless the effective assistance of counsel was required. <u>Id.</u> at 703, 694 A.2d at 467 (cleaned up).

## II. Ineffective Assistance of Counsel

Having determined that Mr. Coyle was entitled under the Act to the effective assistance of counsel in having a petition for a writ of *certiorari* filed, we turn to the issue of whether Mr. Coyle's attorney provided ineffective assistance. The State asserts that, even if Mr. Coyle were entitled to the effective assistance of counsel, he has failed to satisfy either part of the Strickland test, and, in particular, he has failed to establish prejudice by demonstrating that, if filed, the petition for a writ of *certiorari* would have been granted.[18]

### A. Standard of Review

"Our review of a post-conviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact." See State v. Syed, 463 Md. 60, 73, 204 A.3d 139, 146 (2019) (citing Newton v. State, 455 Md. 341, 351, 168 A.2d 1, 7 (2017); Harris v. State, 303 Md. 685, 698, 496 A.2d 1074, 1080 (1985)). We review the postconviction court's factual findings for clear error. See id. at 73, 204 A.3d at 146. However, we review the postconviction court's legal conclusions *de novo*. See id. at 73, 204 A.3d at 146. Ultimately, we will perform our own "independent analysis as to the reasonableness, and prejudice therein, of counsel's conduct." Id. at 73, 204 A.3d at 146 (cleaned up).

---

[18]Although the grant of *certiorari* did not include Mr. Coyle's first question with respect to whether he was denied the effective assistance of counsel, which included the issue of deficient performance, the issue of deficient performance was decided by the circuit court and has been briefed and argued by both parties before this Court. We are therefore able to address the question of ineffective assistance of counsel, including deficient performance, without additional briefing.

## B. The <u>Strickland</u> Test

The Supreme Court provided the following framework for evaluating a claim of ineffective assistance of counsel—namely, a defendant must show that counsel's representation "fell below an objective standard of reasonableness" and that counsel's deficient performance prejudiced the defendant. <u>Strickland</u>, 466 U.S. at 688, 694. To demonstrate ineffective assistance of counsel, both parts of the <u>Strickland</u> test must be satisfied. <u>See</u> <u>Newton</u>, 455 Md. at 355, 168 A.3d at 9. To satisfy the performance part of the test, a petitioner "must show that counsel's performance was deficient." <u>Strickland</u>, 466 U.S. at 687. This requires showing that "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms[]" and did not constitute trial strategy. <u>Id.</u> at 688-89. In <u>Strickland</u>, <u>id.</u> at 689, the Supreme Court stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

(Cleaned up).

To establish prejudice, generally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. Our case law has "interpreted reasonable probability to mean [that] 'there was a substantial or significant possibility that the verdict

would have been affected.'" Ramirez v. State, 464 Md. 532, 561-62, 212 A.3d 363, 381 (2019) (quoting Bowers v. State, 320 Md. 416, 426, 578 A.2d 734, 739 (1990) (cleaned up)); see also Syed, 463 Md. at 86-87, 204 A.3d at 154.

"In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance." Strickland, 466 U.S. at 692 (citing United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984)). In Strickland, id., the Supreme Court stated that in these circumstances prejudice is so likely that a case-by-case inquiry is not warranted. (Citing Cronic, 466 U.S. at 658). The Supreme Court has held that a presumption of prejudice, "though more limited," is warranted "when counsel is burdened by an actual conflict of interest[,]" because "'counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties.'" Strickland, 466 U.S. at 692. This Court has stated that, with respect to an allegation of ineffective assistance of counsel, a court should presume prejudice only if "(1) the petitioner was actually denied the assistance of counsel; (2) the petitioner was constructively denied the assistance of counsel; or (3) the petitioner's counsel had an actual conflict of interest."[19] Ramirez, 464 Md. at 572-73, 212 A.3d at 387.

In Roe v. Flores-Ortega, 528 U.S. 470, 473-74, 483-85 (2000), the Supreme Court of the United States addressed the issue of proof of prejudice in reviewing the Ninth

_____

[19]Where ineffective assistance of counsel is alleged based on a conflict of interest, "prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected the defendant's lawyer's performance." Clark, 485 Md. at 694, 301 A.3d at 253 (cleaned up).

Circuit's reversal of the district court's denial of federal habeas relief, where the defendant alleged ineffective assistance of counsel based on counsel's failure to file an appeal on his behalf.[20] Addressing the prejudice requirement of the Strickland test, the Supreme Court pointed out that the matter was unusual in that it did not involve a counsel's deficient performance at a judicial proceeding, but rather "the forfeiture of a proceeding itself." Id. at 483. The Court stated:

> Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself. According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a fair judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether.

Id. (cleaned up). The Supreme Court held "that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484. Because the record did not clearly demonstrate whether the defendant requested that counsel appeal, or even that there were potential grounds for appeal, the Court was unable to determine whether the counsel had a duty to consult with the defendant and whether the defendant was prejudiced by counsel's actions. See id. at

---

[20]Concerning deficient performance, the Supreme Court held that counsel has an obligation to discuss a potential appeal with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. The Court noted that, in most instances, counsel's performance will be deemed unreasonable under the first part of the Strickland test if the defendant's preferences for appeal were *never* discussed. See id. at 481.

487. The Court vacated the judgment of the Court of Appeals and remanded the case for further proceedings consistent with the opinion. See id. at 487.

### C. Mr. Coyle's Attorney Rendered Ineffective Assistance of Counsel

In this case, we conclude that both parts of the Strickland test have been satisfied; Mr. Edmund's conduct in failing to file a petition for a writ of *certiorari* fell below an objective standard of reasonableness and his deficient performance prejudiced Mr. Coyle. The facts relevant to the deficient performance inquiry are as follows. After the Appellate Court issued its opinion affirming Mr. Coyle's convictions, per his own affidavit, Mr. Edmunds discussed filing a petition for a writ of *certiorari* with both the OPD and Mr. Coyle and was authorized to file a petition. Yet, Mr. Edmunds had not finished drafting the petition on the day it was due, failed to get to the courthouse in time to file the petition, and ultimately did not file the petition.

The failure to file was not based on an assessment by Mr. Edmunds that the circumstances of the case did not warrant filing a petition. To the contrary, in his affidavit, Mr. Edmunds averred that he believed at the time the petition was due, and still believed, that there were issues in the case sufficient to support the filing of a petition for a writ of *certiorari*. Mr. Edmunds described telling Mr. Coyle after the fact about the failure to file the petition as "the worst professional experience[] of his career." These circumstances show that the decision not to file the petition was not the kind of "trial strategy" contemplated by the Supreme Court in Strickland, 466 U.S. at 689, which may contradict a claim that an attorney's conduct fell below an objective standard of reasonableness. These circumstances demonstrate that Mr. Edmund's conduct departed from an objective

- 42 -

standard of reasonable conduct expected of an attorney in a similar situation and constituted deficient performance.  See id. at 688.

We hold that Mr. Edmunds's conduct in failing to file a petition for a writ of *certiorari* resulted in prejudice because it deprived Mr. Coyle of the opportunity to have a petition for a writ of *certiorari* considered by this Court.  To establish prejudice, Mr. Coyle need not demonstrate that the petition for a writ of *certiorari* would have been granted.  In Flansburg, 345 Md. at 705, 694 A.2d at 468, we held that the respondent's counsel's failure to file a motion for modification of sentence "resulted in [the respondent's] loss of any opportunity to have a reconsideration of sentence hearing."  We did not require the respondent to demonstrate that there was a significant or substantial possibility that the motion for modification of sentence would have been granted.  See id. at 705, 694 A.2d at 469; see also Ramirez, 464 Md. at 561, 212 A.3d at 381.  We concluded that prejudice was established by the respondent demonstrating that counsel's deficient performance resulted in the loss of the opportunity to have a motion considered and we afforded the respondent the remedy of filing a belated motion for modification of sentence.  See Flansburg, 345 Md. at 705, 694 A.2d at 468.[21]  In this case, because we have concluded that Mr. Coyle had a right under the Act to the effective assistance of counsel in filing a petition for a writ

---

[21]In State v. Schlick, 465 Md. 566, 577, 214 A.3d 1139, 1145 (2019), we stated that "*Flansburg* made clear that when a defendant directs his or her lawyer to file a motion to modify the sentence, the lawyer's failure to file a timely motion may constitute ineffective assistance of counsel." (Citation omitted).  This case does not present the issue of whether, to demonstrate ineffective assistance of counsel, Mr. Coyle was required to show that he requested that counsel file a petition for a writ of *certiorari* on his behalf and that counsel failed to do so.

of *certiorari* and that due to his counsel's deficient performance, he lost the opportunity to have a petition considered, the same rationale and remedy apply.

In Flores-Ortega, 528 U.S. at 484, the Supreme Court explained that, in granting habeas relief, the Court of Appeals had applied a *per se* prejudice rule and ignored "the critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." The Court stated that, "[i]f the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, . . . he is not entitled to relief." Id. The Court held that, to show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. Although the filing of a petition for a writ of *certiorari* is a discretionary matter, our determination of the prejudice standard is informed by both the Supreme Court's assessment of the Strickland prejudice requirement in Flores-Ortega and our holding in Flansburg. Contrary to Mr. Coyle's position, we do not conclude that prejudice is presumed by counsel's failure to file a petition for a writ of *certiorari*.

Rather, we conclude that Mr. Coyle has satisfied the Strickland prejudice requirement by demonstrating that his attorney was authorized by the OPD under the Act to file a petition for a writ of *certiorari* on his behalf, that his attorney accepted responsibility for filing the petition, and that due to his attorney's deficient performance, he lost the opportunity to have a petition for a writ of *certiorari* considered by this Court. Where a defendant has shown that the OPD authorized an attorney to file a petition for a writ of *certiorari*, that the attorney accepted the assignment, and that due to the attorney's

deficient performance the petition was not filed, the defendant has demonstrated that the attorney's deficient performance caused the loss of an opportunity to have the petition considered by this Court and has satisfied the Strickland prejudice requirement. Under the circumstances of this case, where there is a direct cause and effect relationship between the attorney's deficiency and prejudice to the defendant, there is no need to apply the reasonable probability test set forth by the Supreme Court in Flores-Ortega. "As with all applications of the Strickland test, the question whether a given defendant has made the requisite showing will turn on the facts of the particular case." Flores-Ortega, 528 U.S. at 485. In this case, we conclude that Mr. Coyle has satisfied both parts of the test and that, as a remedy, he may file a belated petition for a writ of *certiorari*.[22]

### III. Conclusion

For the reasons discussed herein, we reverse the judgment of the Appellate Court. In accordance with Maryland Rule 8-302, Mr. Coyle's petition for a writ of *certiorari* must be filed no later than the later of 30 days after the date of the filing of this opinion or 15 days after the issuance of the mandate.

> **JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. RESPONDENT TO PAY COSTS.**

---

[22]We decline the State's invitation to review the petition for a writ of *certiorari* that was attached as an exhibit to Mr. Coyle's petition for postconviction relief and is the petition that Mr. Edmunds averred he intended to file. We will not order that the remedy for prejudice caused by an attorney's failure to file a petition for a writ of *certiorari* due to deficient performance is the filing of a petition that was prepared at the time that the attorney's conduct departed from an objective standard of reasonableness. Mr. Coyle may file a new petition for a writ of *certiorari*.